**TIMBERLAKE et al. v. DAY & ZIMMER-MAN, Inc.**

No. 19.

District Court, S. D. Iowa, Ottumwa Division.

Feb. 4, 1943.

As Corrected March 5, 1943.

**30**

H. S. Life, of Oskaloosa, Iowa, and R. E. White, of Ottumwa, Iowa, for plaintiff.

Ben Poor (of Kuhlemeier, Poor, Fischer & Cray), of Burlington, Iowa, for Day & Zimmerman.

DEWEY, District Judge.

The plaintiffs, F. A. Timberlake, Louis Jagels and Frank Cannop, bring this action for and on behalf of themselves and all other employees similarly situated, as plaintiffs, against Day & Zimmerman, Inc., as defendant, to recover wages which they claim are due them under the Fair Labor Standards Act, 29 U.S.C.A. § 201 et seq.

Defendant is engaged in the processing of war materials for the use of the armed forces of the United States and operates a plant owned by the Government in or near the city of Burlington, Iowa, and known as the "Iowa Ordnance Plant."

The matter came on for hearing on the merits on the 19th day of January, 1943, at Ottumwa, Iowa, and it was ordered by the court that there should first be determined the issues on the question of the liability of the defendant to the three named plaintiffs and, in the event they were successful in maintaining their position, that the court would later take up for determination the issues raised by the plaintiff as to "all other employees of defendant similarly situated." This procedure is authorized by the Federal Rules of Civil Procedure, rule 54(b), 28 U.S.C.A. following section 723c.

The evidence establishes that the defendant is engaged in the manufacture of explosives and the loading of shells for the United States government at the Iowa Ordnance Plant and has been so operating since the 3d day of July, 1941, under a contract with the United States government. That contract provides in substance, among other things: that the defendant in the processing of the ammunition is acting as an independent contractor; that the Government is to furnish all explosives and all metal parts for the loading of the ammunition, including the shipping materials and containers, and that these explosives, materials and parts are to be delivered by the Government f. o. b. at the plant; that all other labor, materials, tools, machinery, motor vehicles, office equipment, supplies, etc., are to be furnished by the defendant; that the title to all work, completed or in the course of construction, or manufacture, shall be in the Government, and upon delivery at the site of the work or at an approved storage site and upon inspection and acceptance in writing by the contracting officer, title to all such materials, tools, machinery, equipment, and supplies, shall vest in the Government; the obligation to furnish the materials, other than that to be furnished by the Government, together with the employment of all labor, and the right to employ and discharge personnel, is in the contractor, subject to certain supervision by the Government; and the Government is to reimburse the contractor for all expenditures made by it in the progress of the work, including the reimbursement of pay to employees.

The defendant contractor had so far advanced in the construction, or supervision of the construction, of the plant and in the purchase and placing of the machinery that by July 3, 1941, the contractor began the processing of ammunition.

During the construction there had been employed at the plant a large number of guards and at the time the defendant began the processing of ammunition they became the employees of the defendant contractor. The plaintiffs herein were members of such guard force and worked as such until their employment was terminated by the defendant.

The Chicago, Burlington & Quincy Railway Company maintained extensive tracks and switching facilities on the ordnance plant grounds and the material for the processing, both that furnished by the Government and that purchased by the contractor, came generally from without the State of Iowa. The goods were received at the plant from the Chicago, Burlington & Quincy Railway Company and taken charge of by switch crews of Day & Zimmerman, and when the goods were processed they were redelivered to the Chicago, Burlington & Quincy Railway for shipment out of the State.

Under the provisions of the contract and under the interpretation thereof by the parties, the ammunition when processed was delivered to the United States Gov-

ernment on the site of the ordnance plant and wholly within the State of Iowa. The shipping outside of the State of Iowa was done by the United States Government.

The guards were there to protect the integrity of the property of Day & Zimmerman and of the United States. The duties of the guards were indefinite but consisted generally in protecting the property, in seeing that no one was on the premises except those duly authorized; in seeing that no explosives or matches or other dangerous articles might be on the clothing or person of workmen or visitors, and to maintain peace and order within the plant.

The named plaintiffs claim overtime compensation alleged to be due them under section 7(a) of the Fair Labor Standards Act (Secs. 201-219, Title 29 U.S. C.A.), from July 3, 1941, until their employment was terminated. The amount of pay due each of the plaintiffs, as I understand it, is not in dispute, if they are entitled to the benefits of the act.

Some things, I think, are fairly deducible from the evidence and established by the law:

1st. That the defendant Day & Zimmerman, in the processing work that it is doing for the Government, is an independent contractor and not an agency of the Government. Alabama v. King & Boozer, 314 U.S. 1, 62 S.Ct. 43, 86 L.Ed. 3, 140 A.L.R. 615.

2nd. The manufacture or processing of goods is not in and of itself commerce. United States v. Darby, 312 U.S. 100, 113, 61 S.Ct. 451, 85 L.Ed. 609, 132 A.L.R. 1430.

3d. The shipment of manufactured goods interstate is such commerce and the prohibition of such shipment by Congress is indubitably a regulation of the commerce. 312 U.S. 113, 61 S.Ct. 451, 85 L. Ed. 609, 132 A.L.R. 1430.

4th. In the acquiring of goods interstate, the processing of those goods and the shipment, or the intention that they be shipped abroad in interstate commerce, all constitutes one and the same flow of commerce and the stoppage of the goods for the purpose of processing does not in and of itself stop such flow of commerce. Swift & Co. v. United States, 196 U.S. 375, 25 S.Ct. 276, 49 L.Ed. 518; Stafford v. Wallace, 258 U.S. 495, 517, 42 S.Ct. 397, 66 L.Ed. 735, 23 A.L.R. 229; United States v. Darby, supra, 312 U.S. at page 122, 61 S.Ct. 451, 85 L.Ed. 609, 132 A.L.R. 1430.

5th. Where the employer is engaged in interstate commerce and the duties of an employee are necessary in the manufacture or processing of goods, the employee is himself engaged in interstate commerce. Kirschbaum v. Walling, 316 U.S. 517, 526, 62 S.Ct. 1116, 86 L.Ed. 1638; Overnight Motor Co. v. Missel, 316 U.S. 572, 575, 62 S.Ct. 1216, 86 L.Ed. 1682; Warren-Bradshaw Drilling Co. v. Hall et al., 63 S.Ct. 125, 87 L.Ed. ——, decided Nov. 9, 1942. And our Circuit, inferentially holds that guards are necessary in the conduct of interstate business. Johnson v. Dierks Lumber & Coal Co., 8 Cir., 130 F.2d 115; and see Kirschbaum case, supra.

6th. If goods are manufactured or processed with the knowledge on the part of the employer that they are to be shipped in interstate commerce, such employer comes within the provisions of the act, even though the goods may be delivered intrastate to a third party for such shipment. Santa Cruz Fruit·Packing Co. v. N. L. R. B., 303 U.S. 453, 463, 58·S.Ct. 656, 82 L.Ed. 954; N. L. R. B. v. Jones & Laughlin, 301 U.S. 1, 37, 57 S.Ct. 615, 81 L.Ed. 893, 108 A.L.R. 1352; United States v. Darby, supra, 312 U.S. at page 117, 61 S.Ct. 451, 85 L.Ed. 609, 132 A.L.R. 1430.

7th. Before an employee can recover as against his employer for wages due under the Fair Labor Standards Act, the burden of proof is upon such employee to show, by a preponderance of the evidence, either that he personally is within the provisions of the act, engaged in commerce or in the production of goods for commerce. Higgins v. Carr Bros. Co., 63 S.Ct. 337, 87 L.Ed. ——; Walling v. Jacksonville Paper Co., 63 S.Ct. 332, 87 L.Ed. ——; both decided by the Supreme Court of the United States, Jan. 18, 1943.

Under the provisions of the act to entitle the plaintiffs to recover in this case they must show by a preponderance of the evidence either that they were at the time of their employment "engaged in commerce," or "in the production of goods for commerce," as those terms are defined within the act.

Section 203 of the Act, Title 29 U.S. C.A., defines the meaning and scope of certain words, among them, as follows:

"(b) 'Commerce' means trade, commerce, transportation, transmission, or communication among the several States or from any State to any place outside thereof."

"(i) 'Goods' means goods * * * wares, products, commodities, merchandise, or articles or subjects of commerce of any character, * * *.

"(j) 'Produced' means produced, manufactured, mined, handled, or in any other manner worked on in any State; and for the purposes of this chapter an employee shall be deemed to have been engaged in the production of goods if such employee was employed * * * in any process or occupation necessary to the production thereof, in any State."

It is an interesting question, but need not here be determined, whether or not the guards as such were "engaged in commerce" if they were guarding the shipments of material within the plant and while it was being processed and before its delivery to the Government in its completed form.

There is an entire lack of evidence as to what proportion of the material coming into the plant was furnished by the Government and what was furnished by the contractor that went into the finished product and as to what duties, if any, the guards had with reference to any materials that were not furnished by the Government. From aught that appears no substantial amount of property purchased by Day & Zimmerman, Inc., went into the processing of the ammunition.

 The position of the defendant therefore that the material furnished, processed, and delivered to the Government for shipment was all material of the United States Government and that in so furnishing and shipping the material, both in and out of the plant, were acts done by the Government in its sovereign capacity, is well taken. The employees however, as I understand it, do not here contend that they were "engaged in commerce," but that they were engaged "in the production of goods for commerce," within the purview of the act.

The guards must recover, if at all, upon the claim that they were engaged "in the production of goods for commerce."

As above stated, the duties of the guards were a necessary part of the processing of the materials, and the plaintiffs clearly would be entitled to recover were it not for the question of whether the commerce —being wholly that of the Government— is commerce within the meaning of the act.

The defendant strenuously insists that if the work of the guards can be considered as being a part of the production of goods, in that their duties were necessary for the production, yet these goods were not produced or processed "for commerce" as the goods were delivered to the United States Government as a sovereignty at the site of the plant and within the State of Iowa, and any shipment by the Government, and all control over the shipment from and after that time, was by the Government in its sovereign capacity in exercising one of its highest prerogatives—that of the conduct of a war—and this would not be "commerce" as used in the Constitution. This presents to my mind the only question in the case, and a very interesting one. Defendant further insists that the power of Congress extends only to the regulation of interstate commerce and that the act therefore could not have been intended to, and if it were so intended, could not, reach transportation by the sovereign itself, as the idea of commerce as used in the Constitution has to do with trade relations between individuals or their representatives and has nothing to do with transportation by a sovereign.

Authority for this position by the defendant is also claimed to be found in National Labor Relations Board v. Idaho-Maryland Mines Corp., 9 Cir., 98 F.2d 129, and further supported by a decision of the same Circuit (9th) in the case of National Labor Relations Board v. Sunshine Mining Co., 110 F.2d 780.

However, neither of these cases decide these questions squarely, although in the first case is the statement, reiterated in the second case, that where a shipment of gold was made from the San Francisco mint where it had been sold to the Government and was then transported by the Government from that mint to the United States mint at Denver, Colorado: "We regard such shipments, not as commercial transactions, but as administrative acts of Government." 98 F.2d 131.

This statement was dictum as thereafter appears the following: "If, however, such acts may be said to constitute commerce, it is a commerce to which respondent's activities are not closely, intimately or substantially related, and which respondent's labor practices do not directly or substantially affect."

From this it is apparent that the 9th Circuit did not determine this question and

had some doubts whether the statement as an abstract proposition of the law was correct. In the present situation the defendant's activities were closely, intimately and substantially related to the transportation of the completed ammunition from the Iowa Ordnance Plant to the soldiers at distant points. It is therefore a question of first impression and interpretation of the statutes as to whether or not under the situation here presented the defendant was engaged in interstate commerce which would bring it and its employees within the purview of the act.

It seems to me, admitting that the transportation of the completed war materials from the plant by the Government was an act of sovereignty, that this alone would not necessarily exempt the defendant from complying with the provisions of the act as the sovereign through its Congress certainly had a right to include within the provisions of the act the transportation of articles by the sovereign itself.

The act, it seems to me, was intended by the Congress to be broad enough to include such transportation. From the above definitions all that the employees were required to prove was that they were working in a vocation necessary in the processing of any article for transportation or transmission without the State.

It is true Congress declared in the act that it was attempting to reach conditions detrimental to the maintenance of the minimum standards of living through the exercise of its powers to regulate commerce among the several States; but this would not limit its power to include therewith a regulation of its own activities as a sovereign to accomplish that purpose.

There is no constitutional prohibition against the Congress declaring that for the purpose of the act commerce should include the interstate carrying of goods of the Government by and in its sovereign capacity.

The Fair Labor Standards Act is a declaration of policy of the United States and as to what constitutes fair labor standards, and determines that so far as hours and wages are concerned they should be at the minimum provided by the act.

While the defendant here is an independent contractor there can be little doubt from the provisions of the contract that the Government itself must pay the wages established by the defendant and must reimburse the defendant company for any overtime it is required to pay under the Fair Labor Standards Act.

The evidence establishes that the guards are and have been for some time past paid for overtime and that recently the defendant has settled with many, if not all, guards now on duty at the plant on their claims for overtime.

It would appear that the parties themselves have interpreted the contract as here contended for by the plaintiffs and it is a fair inference that such payments and settlements were with the approval of the Comptroller General of the United States and that such payments when made will be reimbursed to the defendant by the Government.

Executive or Administrative Officer.

The evidence discloses that during most of the time in controversy the plaintiff F. A. Timberlake was either a lieutenant or captain of the guard and the defendant strenuously claims that this constitutes an executive or administrative office which was within the exemptions of Section 13 of the Act, Sec. 213, Title 29 U.S.C.A. The evidence also discloses that the duties of the guards and of the officers of the guards were very indefinite as they did not seem to know themselves just what their duties were nor how far the officers performed executive as distinguished from the ordinary duties of the guard. I have carefully considered the evidence as it was introduced and come to the conclusion that Mr. Timberlake, although an officer of the guard, was not a bona fide executive or administrative officer of the defendant company.

There is a counterclaim as against Mr. Timberlake on the ground that he was overpaid after he had been reduced from a captain to a guard and, of course, any overpayments by mistake will have to be adjusted.

Other matters are argued by the defendants which I have given careful consideration but find without merit.

I therefore find the following findings of fact:

That the named plaintiffs herein were during all of the times they were employed as guards and from July 3, 1941, to the time of their leaving the defendant company, engaged in work that was necessary in the processing of the Government's goods and

that both they and their employer were during all of those times engaged in the manufacture of goods intended for interstate commerce within the definition of "commerce" contained within the act itself.

And I find as conclusions of law:

1st. That during all of the time in controversy, the defendant Day & Zimmerman, Inc., was an independent contractor and engaged in processing materials for the United States Government, that such materials so processed were made in the stream of interstate commerce as defined in the act, and that the guards as such were engaged in work necessary in the transportation of articles that come within the definition of "commerce" as contained in the act.

2nd. That the named plaintiffs are entitled to the overtime payments substantially as claimed by them. And,

3d. That the plaintiffs are entitled to a judgment for the amounts of such overtime with penalties of double the amounts as provided by the statute and attorney fees, which are fixed at $166.66 for each plaintiff. To all of which Day & Zimmerman, Inc., except.

The attorneys for the plaintiffs may prepare an order in keeping with these findings of fact and conclusions of law and this memorandum opinion.

### Order Correcting Findings of Fact and Conclusions of Law.

In this action the court filed a memorandum opinion on February 4, 1943, with findings of fact and conclusions of law as to the named plaintiffs only.

A motion was filed by the defendant asking that certain statements in the opinion and findings of fact and conclusions of law be corrected to conform to certain facts which it was claimed were inadvertently misstated and found by the court. This motion came on for hearing in open court at Ottumwa, Iowa, on the first day of March, 1943, and was argued and submitted, and, being advised, the court finds:

That it was mistaken in the statement in the opinion that the amount of wages due the named plaintiffs would be agreed upon if the defendant was liable to the named plaintiffs for overtime. This statement will be ordered deleted and the question of the amount of overtime wages due will be fixed by the court at the time the final

order as to these named plaintiffs is prepared and presented to the court for settlement.

The court also stated in the opinion as a finding of fact that the Iowa Ordnance Plant has been operating in the manufacture of explosives since the third day of July, 1941. The evidence establishes that the manufacture of explosives did not start until the 21st day of August, 1941, although the named plaintiffs started to work for the defendant on the 3d day of July, 1941.

The court in the first finding of fact also inadvertently stated that the named plaintiffs were by reason of their occupation engaged in interstate commerce, while it should have stated that they were not engaged in interstate commerce but were engaged in employment necessary to the production of goods for commerce. The finding of fact filed with the memorandum opinion of February 4, 1943, is therefore set aside and the following is the finding of fact of the court in lieu thereof:

"Findings of Fact.

"That the named plaintiffs herein were employed by the defendant from July 3, 1941, until the date of their severance of employment with the defendant company, which was prior to the commencement of this action. That the defendant began the processing of goods for interstate commerce on the 21st day of August, 1941. That from and after that date the named plaintiffs were employees of the defendant engaged in work that was necessary in and to the production of goods intended for interstate commerce, within the definition of 'commerce' contained within the Act."

And the 1st and 2nd conclusions of law are set aside and the following are in lieu thereof:

"Conclusions of Law.

"1st. That from and after the 21st day of August, 1941, the defendant Day & Zimmerman, Inc., was engaged in processing and manufacturing materials for the United States Government intended for interstate commerce, and that the named plaintiffs from and after August 21, 1941, to the date of their discharge, were employees of the defendant as guards and as such were engaged in work necessary in and to the production of goods to be transported in interstate commerce within the definition of 'commerce' as contained in the act; but the evidence does not establish that

prior to August 21, 1941, the named plaintiffs were engaged in work necessary in or to the production of goods that were intended for interstate commerce.

"2nd. That the named plaintiffs are entitled to overtime wages.

\* \* \*"

Both parties except.