## DISTELHORST v. DAY & ZIMMERMAN, Inc.

### Civil Action No. 59.

District Court, S. D. Iowa, E. D.
Dec. 22, 1944.

H. M. Havner, of Des Moines, Iowa, and John Hale, of Clark, Pryor, Hale & Plock, all of Burlington, Iowa, for claimants Distelhorst and others.

Major Bert E. Church, of Judge Advocate General's Office, of Kansas City, Mo., Wm. R. Sheridan, Asst. U. S. Dist. Atty.,

of Keokuk, Iowa, and Maurice F. Donegan, U. S. Dist. Atty., of Davenport, Iowa, for Day & Zimmerman.

DEWEY, District Judge.

This action was brought by Fred Distelhorst for and in behalf of himself and others similarly situated and against Day & Zimmerman, Inc., agents for the United States Government in the processing of high explosive shells at the Iowa Ordnance Plant near Burlington, Iowa. It is a suit to recover overtime compensation provided by the Fair Labor Standards Act of 1938, 29 U.S.C.A. § 201 et seq.

There was no question raised at the trial but that the claimants were engaged in the production of goods for commerce and the parties by stipulation have agreed as to the period in controversy as to each claimant, the amount of his wages during that period and the number of hours worked in each week.

The only defenses are:

That claimants were not similarly situated with the plaintiff, and that each was employed by the defendant in a bona fide executive or administrative capacity, within the meaning of Section 13(a)(1) exempting such employees from the wage and hour provisions of the Act, as defined and delimited by the Administrator.

The action came on for hearing on its merits in open court at Keokuk, Iowa, on the 21st day of November, 1944, and was submitted on written arguments. A jury was expressly waived and the issues tried to the court without the intervention of a jury.

As to the defense that all or some of the claimants were not similarly situated with the plaintiff, Section 16 of the Act, 29 U. S.C.A. § 216, provides:

"Action to recover such liability may be maintained in any court of competent jurisdiction by any one or more employees for and in behalf of himself or themselves and other employees similarly situated, * * *."

▮ In addition to the necessity of a liberal interpretation of the Act by reason of its remedial nature, the Congress broadened the customary procedure of bringing claimants before the court, evidently having in mind a simplification of court procedure by bringing in claimants in groups. In interpreting therefore the meaning of the words "similarly situated" the courts

should not be governed by how much or what degree of similarity there may or may not be. but permit such a procedure if there is any similarity.

▮ Plaintiff was a building foreman and with the exception of the men in this classification each claimant had a marked difference in his employment, but each was a foreman or held a position of a similar relationship in the plant, and this makes some similarity in their situation with reference to their employer and the defense that some or all of the claimants were not similarly situated with the plaintiff should be overruled.

This leaves for decision the fact question as to each claimant whether he was employed in a bona fide executive or administrative capacity, as defined by the regulations of the Administrator. The Act and such regulations are so readily ascertained and set out in so many authorities that it is not necessary to repeat them here. See Marshall Wells Co. v. Hawley, D.C. Minn., 53 F.Supp. 295 (Nordbye, J.); Stanger v. Glenn L. Martin Co., D.C.Md., 56 F.Supp. 163 (Coleman, J.); Ralph Knight, Inc., v. Mantel, 8 Cir., 135 F.2d 514; Smith v. Porter, 8 Cir., 143 F.2d 292.

▮ One claiming an exemption granted by the Act must establish by a clear preponderance of the evidence the subdivisions of the administrator's definition and delimitation of the expression "employee employed in a bona fide executive, administrative, * * * capacity." See Smith v. Porter, 8 Cir., 143 F.2d 292, 294, supra.

If any of the employees are to be considered as exempt from the general provisions of the Act, it is on the ground that they are executives except as to Robert J. Hazard, whose status also includes the question as to whether he was an administrator within the meaning of the act as defined by the regulations of the Administrator.

I have examined carefully the written arguments of counsel, the authorities bearing upon these questions, the interpretation of the Act by the Administrator and refreshed my recollection as to the testimony of the witnesses from my own notes as to each individual case and I am satisfied that there should be these classifications:

1st, as to all of the claimants, except Philpott and Hazard.

2nd, as to Philpott.

3d, as to Hazard.

The names of the claimants, the periods in controversy, their position with the company and their rates of pay, are as follows:

1. Fred Distelhorst. From October 2, 1941, to March 24, 1943, which was the only period in controversy as to him, he was a building foreman at $45 a week, which was subsequently increased to weekly sums of $50 and $60.

2. Meredith H. Ferris. There are two periods in issue as to him—from December 14, 1941, to July 10, 1943, when he was an assistant building foreman at weekly wages of $45 and $54, and from July 11, 1943, to December 1, 1943, when he was a building foreman at $60 per week.

3. Gilbert Nelson. Two periods in issue: From March 29, 1942, to December 5, 1942, when he was an assistant building foreman at $66 per week, and from December 6, 1942, to February 2, 1943, when he was a building foreman at $72 per week.

4. Harry Rugg. During the only periods in issue from January 1, 1942, to April 18, 1942, he was an assistant building foreman at $45 and $54 weekly wages and from April 19 to August 28, 1943, he was a building foreman at $60 per week.

5. Fred P. Wedekin. During the only periods in issue from January 11, 1942, to December 5, 1942, he was a building foreman at $50 to $60 per week, and from December 6, 1942, to January 9, 1943, he was an assistant building foreman at $66 per week, and from January 10, 1943, to June 24, 1943, he was a building foreman at $72 per week.

6. Harold K. Weatherford. The only periods in issue are from December 2, 1941, to July 4, 1942, when he was chief clerk in the stores department at $55 per week, and from July 5, 1942, to July 30, 1943, he was an assistant storekeeper at $60 per week.

7. George C. Roe. The only period in issue as to him is from March 4, 1942, to May 8, 1943, when he was yard foreman and paid at the rate of $45 per week.

8. Robert J. Hazard. The only period in issue as to him is from December 27, 1942, to July 31, 1943, when he was an assistant safety engineer at $60 per week.

9. Perry M. Philpott. The only period in issue as to him is from September 18, 1941, to September 4, 1943, while he was Captain in the Fire Department at weekly wages of $45 and $50 per week.

█ I am satisfied from the evidence that the above named claimants, numbered from 1 to 7, inclusive, made recommendations to the superintendent above them as to employments, advancements and discharges and, while naturally such recommendations were considered by the superintendents as they came from the foreman immediately in charge of the men under consideration, their recommendations were not given particular weight within the spirit and intent of the regulations. It is very apparent that such superintendents had information about employees from other sources and reserved to themselves the final decision.

In all these cases also the men were working foremen and so closely connected with the manual labor of the men under them that they were required to and did perform substantial manual labor of similar work.

Defendant's witnesses admit that claimants did some manual work and while there is some dispute in the evidence, I am satisfied they did work under pressure to produce a certain amount of products and to keep up with other departments. Percentages are difficult of determination where no records are kept and especially where all the witnesses know the percentages required, but under the general situation presented I am satisfied they did work the required time. Mr. George C. Roe (7) appears to have worked long hours for a comparatively low wage.

The status, however, of the remaining two claimants—Philpott and Hazard—come under a different classification as they were not engaged in manual labor in connection with the production of goods for commerce.

█ Mr. Philpott was a captain in the fire department. His immediate and only superior was the fire chief. The employment and discharges of the employees here were on a somewhat different basis than other men in the plant, as the employees in the fire department were more or less selected by the fire chief and not by the personnel department. Philpott recommended firemen to be employed and those recommended were employed. The very nature of his position required that should he recommend a separation of employment his suggestions would be accepted. Also, I am

satisfied that the services performed by Mr. Philpott, as far as manual labor was concerned, similar or like that performed by the firemen under him, was negligible and not substantial. He should be classified as an executive.

■ Mr. Hazard's situation is also different from the other claimants in that he was an assistant safety engineer, and in the safety department. This safety department, under the chief safety engineer and his assistants, was doing administrative work in effectuating the safety policies of the Company. It was responsible only to the general manager and the work was specialized. The general duties of the safety engineers were to determine causes, make rules and provide in every way possible for the prevention of accidents and dangers. Mr. Hazard did make some inspection trips through the buildings to which he was assigned to check on reports and see for himself whether any possible conditions could be employed to prevent explosions. The very nature of his position and employment was such that I think it naturally results that his recommendations as to hiring and firing of any of the men under him would be given serious and particular weight, but it seems to me that he comes under the exemption of the provisions of the Act as being an administrator rather than an executive. His compensation was at a rate of more than $200 per month and his employment comes within each of the regulatory requirements promulgated by the Administrator of the Act to classify him as an administrator.

I therefore make the following

### Findings of Fact.

1. Day & Zimmerman is a corporation engaged in Iowa in the processing of high explosive bombs and shells for the United States Government.

2. That all of the claimants are foremen in said plant, or their status is similar thereto, and they are all similarly situated with reference to their employer as the plaintiff Distelhorst.

3. That each of the claimants referred to above from number 1 to 9, inclusive, was an employee of said corporation and each has worked during the periods involved more than the minimum hours permitted by the Fair Labor Standards Act.

4. That the claimants numbered 1 to 7 above were working foremen and their hours of work of the same nature as that performed by non-exempt employees exceeded 20 per cent. of the number of hours worked in the workweek by the non-exempt employees under their direction.

5. That the claimants numbered from 1 to 7 above did not have the authority to hire and fire other employees nor were their suggestions and recommendations as to the hiring or firing or as to the advancement and promotion or of any other change of status of other employees given particular weight.

6. As to claimant number 8 above, Perry M. Philpott, I find that he did not perform hours of work of the same nature as that performed by non-exempt employees to exceed 20 per cent. of the number of hours worked in the workweek by the nonexempt employees under his direction, and his recommendation as to hiring and firing of employees was given particular weight.

7. As to claimant number 9 above, Robert J. Hazard, I find that his compensation was at a rate of not less than $200 per month; that he regularly and directly assisted the chief safety engineer in nonmanual work requiring the exercise of discretion and independent judgment and that he also worked and performed such services directly under such chief engineer as to bring him within the exception to the provisions of the Act by reason of his being an administrative officer within the definition of such and in accordance with the regulations of the Administrator of the Act.

And as

### Conclusions of law

I find:

1st. That Fred Distelhorst, Meredith H. Ferris, Gilbert Nelson, Harry Rugg, Fred P. Wedekin, Harold K. Weatherford, and George C. Roe, were not bona fide executives within the meaning of the Act as defined and delimited by the regulations of the Administrator.

2nd. Defendant has failed to pay overtime wages to them for the periods mentioned.

3d. That claimants, Perry M. Philpott and Robert J. Hazard, were bona fide executives or administrators within the meaning of the terms as defined and delimited by the administrator.

4th. That the plaintiff Distelhorst and the above claimants numbered from 1 to 7, inclusive, are entitled to recover for one-half of the overtime hours each week that

they worked during the several periods covered by the Act and an equal amount additional as liquidated damages, and that such overtime should be figured under the rule established by the case of Overnight Motor Transp. Co. v. Missel, 316 U.S. 572, 62 S.Ct. 1216, 86 L.Ed. 1682, and commented upon in the case of Walling v. A. H. Belo Corporation, 316 U.S. 624, 62 S.Ct. 1223, 86 L.Ed. 1716.

5th. That the claims of Perry M. Philpott and Robert J. Hazard are dismissed upon their merits and judgment should be entered against them for all costs made by them.

6th. That there should also be assessed as against the defendant an attorney fee, but as the amount of this fee should be determined to some extent by the amount recovered, the attorneys in preparing the judgment order will leave the amount blank and the court will determine the amount that should be allowed at the time of the presentation of the judgment order. The Act only provides for one attorney's fee.

7th. That the amount of overtime worked is shown by the stipulations of record herein. Claimants numbered 1 to 7 above are entitled to the relief demanded according to the above figures with costs.

The attorneys for plaintiff may prepare a judgment entry in conformity with the above findings of fact and conclusions of law and submit the same for signature or settlement if any controversy arises.

Defendant excepts to each and every finding of fact and conclusions of law above set forth, and the plaintiffs, Perry M. Philpott and Robert J. Hazard, except as to the findings of fact and conclusions of law announced as to them.