PHILLIPS v. FEDERAL CARTRIDGE
CORPORATION et al.

WOO v. SAME.

WYCKOFF v. SAME.

Civil Actions Nos. 637, 571, 668.

District Court, D. Minnesota,
Third Division.

Jan. 8, 1947.

John Edmund Burke, of St. Paul, Minn., and George W. Colburn, of Minneapolis, Minn., for plaintiffs.

Victor E. Anderson, U. S. Atty., and Linus J. Hammond, Asst. U. S. Atty., both of St. Paul, Minn., for defendant.

DONOVAN, District Judge.

Plaintiffs commenced these actions to recover overtime compensation, liquidated damages, attorneys' fees and incidental costs, under the Fair Labor Standards Act of 1938, 52 Stat. 1060, 29 U.S.C.A. §§ 201–219, hereinafter referred to as the Act.

By answer, defendant claims plaintiffs were employed in bona fide executive, administrative or professional capacities, within the meaning of the Act and defined in regulations issued pursuant thereto. The cases were consolidated for trial.

That the parties were at all times subject to the Act is not disputed. The sole question for determination is whether or not plaintiffs qualified as exempt executive, administrative, or professional employees under the Act.

It is undisputed that defendant is a cost-plus-a-fixed-fee contractor with the United States Government, for the manufacture of small arms ammunition.

The facts in each case are summarized as follows:

*Jay R. Phillips*

Plaintiff Jay R. Phillips, prior to employment with defendant, had been employed for thirty-one years by the City of Minneapolis in its Fire Department. He commenced work for defendant on or about September 15, 1941, as a Lieutenant at a rate of pay of $150 per month. Shortly thereafter he was promoted to Assistant Chief of defendant's fire department, working eight hours per day during a five-day week. He lived at home. For a short time, while a Lieutenant, he was paid overtime, but from the time he was elevated to Assistant Chief in March, 1942, overtime was discontinued. He was the only Assistant Chief, and had about forty men working under him. He received $250 per month for his services as such Assistant Chief. From the time of said promotion he worked eight hours per day, six or seven days a week.

Defendant's fire department consisted of two stations, with twenty men on each shift. Plaintiff and the Chief were required to respond to fire calls. He described his work as instructing subordinates, demonstrating to them effective methods of work, drilling firemen and new recruits. He was required as Assistant Chief to be the first man in the building where a fire was reported, and had to help in laying the hose lines and raising the ladders that were needed. He also engaged in the work of inspecting the plant, in which he was assisted by about eighteen firemen. He spent two hours daily on inspection. He was in complete charge of his shift as a superior officer. Plaintiff's application for employment, and his supporting letter written on September 8, 1941, fully indicate the required qualifications for the position he sought and in which he was later employed. During the Fire Chief's absence, he was the ranking officer in charge. When he left defendant on June 30, 1943, three additional Assistant Fire Chiefs had been added to the fire department personnel.

Phillips' judgment and opinions were respected, and from time to time he rated the work of those working under him. He had a desk in the department's main office.

*Howard F. Woo*

Plaintiff Howard F. Woo is a graduate of the University of Minnesota, with degrees of Bachelor of Mathematics (1927) and Architecture (1931). This plaintiff had nine years of college work, including three years in chemical engineering. Following graduation he managed a restaurant which catered to approximately 10,000 customers per month, and in this connection he was the treasurer and in charge of public relations, purchased supplies, kept all records, supervised food costs and production, and hired and supervised employees.

With this background, he began work for defendant on April 4, 1942, as a draftsman in the tool engineering department, and was paid for overtime worked. Com-

mencing December 6, 1942, he was paid $69.60 per week, and commenced to specialize in gauge drawing. There were fifty draftsmen in the department in 1943, who were assigned to component, product and gauge drawing. This plaintiff, from December 6, 1942, was classified as an "Engineer III" and designated the "Group Leader" in the gauge section. There were four draftsmen working in his group, all of whom were paid by the week and received no overtime. He had no authority to hire, fire, promote or change the status of men in the group. He devoted a good share of his working time to drawing and looking over the premises to clarify his understanding of what was required in the work he performed. As a Group Leader he worked eight hours per day during a six-day week. Seventy-five per cent of his work consisted of making drawings of existing gauges for which defendant had no drawing. As a Group Leader he would advise those working with him from time to time, and was the contact between the group and the chief draftsman. His work necessitated the use of elementary mathematics, subtraction and addition, and was subject to the approval of the chief draftsman. His employment by defendant ended. December 31, 1943.

*Nicholas Wyckoff*

Plaintiff Nicholas Wyckoff commenced to work for defendant March 5, 1942. He completed high school and had four months in business college. Applying for employment, he described himself as one who had been accustomed to shoulder unusual and tremendous responsibility along business lines. Wyckoff was paid for overtime worked up to September, 1942, at which time he was transferred to the production schedule department. Here he had one assistant for two months, and later another assistant was added. His work was largely the obtaining of information pertaining to man hour production, the use of addition, subtraction and division by aid of a calculating machine, and the dictating of production reports to his assistants. He also performed work in connection with the weighing of material. He would at times confer with the superintendent and foremen about production or the lack of it,

and, if circumstances warranted, he would call his "boss," the building supervisor, at his home by telephone and report working conditions. He would take inventory and make a written report to his superior. He would also arrange for transfer of personnel. He took meter readings and made out reports of "comparative scrap" on hand for each shift. He rated the employees under him from time to time, criticizing their work and recommending wage increases. He had no authority to hire, fire or discipline, but could influence action toward removal of a subordinate. He was paid $250 per month, whether he worked full time or not. He was what was termed a "Supervisor III"; he could delegate work and his requisitions for additional help would be given consideration.

Defendant's Twin Cities Ordnance Plant covered a large area with 700 to 800 buildings thereon, and at one time employed 26,000 workers.

■ Were the plaintiffs exempt under the Act as executive, administrative or professional employees of defendant? Skidmore v. Swift & Co., 323 U.S. 134, 65 S. Ct. 161, 164, 89 L.Ed. 124, emphasizes that "each case must stand on its own facts."

The Regulations of the Administrator, equivalent to statutory law, define "executive," "administrative" and "professional" employees as follows:

"*Executive.*—The term 'employee employed in a bona fide executive * * * capacity' in Section 13(a) (1) of the Act shall mean any employee,

"(A) whose primary duty consists of the management of the establishment in which he is employed or of a customarily recognized department or subdivision thereof, and

"(B) who customarily and regularly directs the work of other employees therein, and

"(C) who has the authority to hire or fire other employees or whose suggestions and recommendations as to the hiring or firing and as to the advancement and promotion or any other change of status of other employees will be given particular weight, and

"(D) who customarily and regularly exercises discretionary powers, and

"(E) who is compensated for his services on a salary basis at not less than $30 per week (exclusive of board, lodging, or other facilities), and

"(F) whose hours of work of the same nature as that performed by nonexempt employees do not exceed twenty percent of the number of hours worked in the workweek by the nonexempt employees under his direction."

"*Administrative.*—The term 'employee employed in a bona fide * * * administrative * * * capacity' shall mean any employee

"(A) who is compensated for his services on a salary or fee basis at a rate of not less than $200 per month (exclusive of board, lodging, or other facilities), and

"(B) (1) who regularly and directly assists an employee employed in a bona fide executive or administrative capacity (as such terms are defined in these regulations), where such assistance is nonmanual in nature and requires the exercise of discretion and independent judgment; or

"(2) who performs under only general supervision, responsible nonmanual office or field work, directly related to management policies or general business operations, along specialized or technical lines requiring special training, experience, or knowledge, and which requires the exercise of discretion and independent judgment; or

"(3) whose work involves the execution under only general supervision of special nonmanual assignments and tasks directly related to management policies or general business operations involving the exercise of discretion and independent judgment;"

"*Professional.*—The term 'employee engaged in a bona fide * * * professional * * * capacity' in Section 13(a)(1) of the Act shall mean any employee who is

"(A) engaged in work

"(1) predominantly intellectual and varied in character as opposed to routine mental, manual, mechanical, or physical work, and

"(2) requiring the consistent exercise of discretion and judgment in its performance, and

"(3) of such a character that the output produced or the result accomplished cannot be standardized in relation to a given period of time, and

"(4) whose hours of work of the same nature as that performed by nonexempt employees do not exceed twenty percent of the hours worked in the workweek by the nonexempt employees; provided that where such nonprofessional work is an essential part of and necessarily incident to work of a professional nature, such essential and incidental work shall not be counted as nonexempt work; and

"(5) (a) requiring knowledge of an advanced type in a field of science or learning customarily acquired by a prolonged course of specialized intellectual instruction and study, as distinguished from a general academic education and from an apprenticeship, and from training in the performance of routine mental, manual, or physical processes; or

"(b) predominantly original and creative in character in a recognized field of artistic endeavor as opposed to work which can be produced by a person endowed with general manual or intellectual ability and training, and the result of which depends primarily on the invention, imagination or talent of the employee, and

"(B) who is compensated for his services on a salary or fee basis at a rate of not less than $200 per month (exclusive of board, lodging, or other facilities; * * *)."

In Smith et al. v. Porter et al., 8 Cir., 143 F.2d 292, at page 295, the Court said:

"The administrator's definition was adopted after a hearing participated in by representatives of industry and labor. The intended scope of the definition is indicated by the following quotation from the report made to the administrator by the officer before whom the hearings were held:

" 'The present definition of the terms "executive," and "administrative" applies with particular aptness to persons who are commonly called "bosses." The range of exemption is broad. It extends from the pres-

ident of a large and complex corporate structure down to the foreman in charge of a very minor department.' 2 CCH Labor Law Service, par. 31,302.08."

The section granting exemptions from the general scope of the Act must be strictly construed. Defendant has the burden of proving such claimed exemption. In my opinion, the defendant has sustained that burden by a preponderance of evidence establishing exemption under the Act.

The evidence in plaintiff Phillips' case reveals an employee second in command of a fire department which, in size and importance, compared favorably with those of the state's largest municipalities. His immediate superior was the Fire Chief. The very nature of this plaintiff's position as Assistant Fire Chief suggests that anything he might recommend or request in connection with the fire department, its personnel or equipment, would be given every consideration. Manual or ordinary tasks performed by him were of a supervisory or instructive type, and in that respect failed to satisfy the exception to the sixth element of the Administrator's definition of an "executive" employee. True, what he did incidentally and necessarily partook somewhat of the nature of ordinary work performed by employees subordinate to him, but it was nonetheless related to, and a part of his executive or supervisory duties, and as executed by the Assistant Chief, was not work of a type normally performed by nonexempt employees. Hence he should be classified as an executive. Anderson v. Federal Cartridge Corporation, D.C.Minn., 62 F.Supp. 775; same case affirmed 8 Cir., 156 F.2d 681.

In the case of plaintiff Woo, the facts warrant concluding that he qualifies as an executive or a professional employee. Few are those who have attained his qualifications. His background presents a picture of an unusually intellectual and capable professional man. Upon him the University of Minnesota conferred degrees of Bachelor in Mathematics and Bachelor in Architecture, to which was added three years at the same institution devoted to chemical engineering. In defendant's employ this plaintiff advanced to what was termed an "Engineer III" and "Group Leader." At different times he had four to seven draftsmen working under him. The work performed by him required original and creative ability and special training. He was skillful and efficient. Drawings completed by his group were subject to his approval and had to satisfy his judgment before they were delivered to the Chief Draftsman of the department. His knowledge and skill were superior to the ordinary draftsman's, and more was expected of him. His opinions and recommendations were given weight. To say that he did not exercise discretion and independent judgment in the performance of his duties as "Group Leader" cannot be supported by the record. From his employment with defendant he stepped into business for himself as an "industrial designer." Defendant has satisfied the Administrator's definition of an "executive" or a "professional" employee by the greater weight of the evidence in the case of this plaintiff.

Plaintiff Nicholas Wyckoff, during the period we are here concerned with, was employed by defendant as a "Supervisor III" and was paid $58.40 per week for his services. His application for employment and the opinion expressed on January 7, 1943, by G. L. Timmerman (defendant's Building Superintendent) with reference to this plaintiff, while working under him, pictures a man of high school and business college education, with industrious habits, desirable business experience, and a commendable record of work performed while in defendant's employ. In the words of his counsel, this "plaintiff does not, as suggested by the defendant, make a studied attempt to minimize [see Peffer v. Federal Cartridge Corporation, D.C.Minn., 63 F.Supp. 291 at page 293] his importance and employment responsibilities. * * *"

It detracts nothing from plaintiff's ability to discount his self-appraisal. He carried out the duties assigned to him and performed well the tasks incidental to his employment. There is no dispute about his qualifying under the Administrator's Regulation 541.2 (A), but the point is made that he failed to meet the requirements of an administrative employee under 541.2 (B)

(1) (2) and (3). In my opinion, he qualifies under paragraph (B) (1) as one "who regularly and directly assists an employee employed in a bona fide executive or administrative capacity (as such terms are defined in these regulations), where such assistance is nonmanual in nature and requires the exercise of discretion and independent judgment." That he exercised discretion and independent judgment is supported by the evidence to the effect that he had authority to revise schedules, that he recommended subordinates for increase in wages, and that he did rate employees working under him. This is emphasized by plaintiff's application for work at about the time he left the employ of defendant, wherein he described his work as a Supervisor during the period herein sued upon in these words:

"Building Supervisor—Supervising Planning, Requisitioning of Raw Materials, Allocation of Personnel, Maintenance and Revision of Machine and Personnel Standards, Reporting and Correlating Production Information. I Facilitated the Achievement of Production Schedules and Submitted Official Daily Production Reports. Maintained All Ledgers and Data Pertaining to These Two Buildings."

I have not much doubt about the plaintiff's claim that he did work in the category of menial tasks and manual labor at times, but I am satisfied by the preponderance of the evidence that such tasks and labor were less than the twenty per cent required to make him nonexempt. As this plaintiff has pointed out, there were times that he worked alone, but the greater part of the time he had one or more assistants working under him. His salary measured up to that required to be paid an executive or administrative employee.

■ Plaintiff did not have to attend foremen's meetings, or have the right "to make the controlling recommendation as to the status" of employees working under him, in order to qualify as an executive or administrative employee under the Act. Marshall-Wells Co. v. Hawley et al., D.C.Minn., 53 F.Supp. 295; Smith v. Porter, supra.

While much of plaintiffs' work may have been more or less routine, they all exercised discretion and directed work of subordinates, and were paid salaries in excess of $200 per month.

The Department of Labor, in its Bulletin of October 24, 1940, singles out the salary paid an employee as something substantial in the way of evidence supporting defendant's claim for exemption, as follows:

"However, it may be reiterated here that a salary criterion constitutes the best and most easily applied test of the employer's good faith in claiming that the person whose exemption is desired is actually of such importance to the firm that he is properly describable as an employee employed in a bona fide administrative capacity.

\*     \*     \*     \*     \*     \*

"Also included in this group are persons who are in charge of a so-called functional department, which may frequently be a one-man department. The work of these employees is directly related to general business operations."

Precedents are not particularly helpful in evaluating the facts of the instant cases. The court looks beyond the shadow of the title bestowed by the employer upon the employee to the character of the work performed. The required nonexempt work is lacking here.

■ Plaintiffs made no point of their claimed overtime under the Act until subsequent to cessation of their employment by defendant. While this is not controlling, it does not assist a party who is almost entirely dependent on the recollection of facts remote in time, and brought out by witnesses interested in the outcome of the cause. Hoff et al. v. North American Aviation, Inc., D.C.Tex., 67 F.Supp. 375, 378.

Pertinent here are the words of Judge Joyce in Anderson v. Federal Cartridge Corporation, supra, at page 783 of 62 F. Supp.:

"There is a conflict in the evidence as to the amount of time these as well as other plaintiffs spent in work of the same nature as the non-exempt employees under their direction. Much of this evidence is unreliable because of an apparent misunderstanding or misinterpretation by the witnesses as to what should be included as 'work of the same nature'. Although the

**528**

periods in question antedated the trial by some two years, many of these witnesses testified glibly to exact percentages of the time each plaintiff spent in doing exempt and non-exempt work. Assuming that such witnesses were engaged in doing some work while they were in defendant's employ, it is difficult to conceive how there is sufficient foundation for such categorical opinions. In respect to similar testimony in a wage and hour suit against the contract operator of the Iowa ordnance plant, Judge Dewey said in Distelhorst v. Day & Zimmerman, D.C., 58 F.Supp. 334, 336:

" 'Percentages are difficult of determination where no records are kept and especially where all the witnesses know the percentages required, * * *.' "

As I view the evidence, plaintiffs' duties were supervisory in character and of such a nature as to constitute an integral part of their work as exempt employees.

Defendant may submit findings of fact, conclusions of law and order for judgment in its favor.

An exception is allowed plaintiffs.