PFOSER v. FEDERAL CARTRIDGE CORPORATION.

NELSON v. SAME.

DIETRICH v. SAME.

Nos. 958, 957, 953.

District Court, D. Minnesota, Third Division.

March 12, 1947.

Drill & Drill and Frank Drill, all of St. Paul, Minn., for plaintiffs.

Henry F. Simons, of Minneapolis, Minn., for defendant.

DONOVAN, District Judge.

These three cases were commenced by plaintiffs to recover overtime compensation, liquidated damages and counsel fees from defendant, under the Fair Labor Standards Act of 1938, §§ 1–19, 29 U.S.C.A., §§ 201–219, which, for convenience, will be hereinafter referred to as the Act.

Defendant by its answers denies plaintiffs' right to overtime compensation, and alleges that plaintiffs were at all times employed as bona fide executive and administrative employees.

The three actions were consolidated for trial and heard by the court without a jury.

The evidence disclosed that defendant was, during all the times herein, a cost-plus-a-fixed-fee contractor, under contract with the United States Government for the manufacture of small arms ammunition for war purposes at defendant's Twin Cities Ordnance Plant, which ammunition was destined for points beyond Minnesota.

The plant site, consisting of some 23,000 acres with hundreds of buildings large and small, was enclosed by fences, and, for obvious reasons, was not open to the general public. At the peak of operations there were approximately 30,000 persons employed there.

For the purposes of plant protection defendant employed about 650 to 700 guards, who were sworn in as auxiliary military police, and who were furnished with guns and ammunition for use, if necessary, in connection with their work. The ranking of the civilian guards from the top down was as follows: Director of Guards, Assistant Director of Guards, Executive Lieutenants or Captains, Second Lieutenants, First Sergeants, Sergeants, Corporals, Privates First Class, Guards, Guardettes. Parking lot attendants and truck escorts were also assigned to the guard force.

The working time of the guards was divided into three shifts. The first, or day shift, had about 235 guards on duty and 200 on each of the following two shifts. The entire guard force wore uniforms, furnished by defendant for plant use only.

The three plaintiffs, were given the rank of Executive Lieutenants or Captains. As such, plaintiffs were paid $64 for a variable week. Plaintiffs Nelson and Dietrich were shift commanders, and Pfoser was an instructor in charge of the guard drill school.

It is undisputed that the plaintiffs were responsible only to the Guard Director or those superior to him. The duties of the guards consisted generally of protecting the plant property against illegal and unauthorized entry, guarding against sabotage and espionage, theft or malicious damage, protecting the personnel, preserving order on the premises, and checking all persons entering or leaving at the plant gates.

The guard force was subject to general orders similar to those of the United States Army. The duties of Nelson and Dietrich as shift commanders were the same, and they were required to punch the clock at General Headquarters building, put on uniforms and secure guns at Headquarters building, read and initial orders at the desk, read the log, see that all relief guards were present and properly checked in, read orders to relief guards if any changes appeared in same, line up relief guards for inspection as to uniform, weapons, etc., contact shift Captains coming off duty to learn the situation on that shift, relieve the Captain coming off duty at Headquarters and take over, and check the area.

The foregoing constitute some of the general facts adduced at the trial. A summary of facts pertinent to each of the plaintiffs may be helpful.

Vincent Pfoser

This plaintiff commenced to work for defendant as a guard at its Twin Cities Ordnance Plant near New Brighton, Minnesota, on September 15, 1941. In April, 1942, he was promoted to Executive Lieutenant. His duties consisted of instructing and drilling new guards, and included the following: teaching manual of arms, teaching close order drill, teaching rifle, pistol and shotgun marksmanship, instructing new recruits and bodyguards, interpreting and explaining orders for plant protection, showing defense film, teaching judo, teaching guard orders, preparing weekly instructions for old guards, teaching care and cleaning of weapons after firing and during storage, distributing ammunition for target practice and duty purposes. He was an able instructor. He had college training, experience with the Minnesota National Guard, and was a reserve officer in the regular Army, having served in the armed forces during World War II. He made up schedules of instructions which were submitted to the Guard Director for approval. He performed no guard duty other than to

direct, drill and be responsible to the Guard Director for the efficiency and training of the guard force. During all of the time he was employed by defendant he received over $200 per month. He describes his work in these words: "My job was to instruct the Guard force according to orders * * *. I had no power to interpret orders * * *. I spent most or seventy-five to eighty per cent of my time in the office" provided for the guards. This plaintiff had no authority to hire or fire. The only manual labor he engaged in was cleaning guns, and this work he volunteered to do because, as he testified, "I liked guns".

At the time he entered the military service he was informed by defendant that he was rated and ranked as a Captain in defendant's guard department, and upon his return from the service defendant offered him a job that was the equivalent of that of a foreman, at $69 per week.

Lester K. Nelson

Plaintiff Nelson entered the employ of defendant on or about September 1, 1941, as a regular guard in defendant's Plant Protection department at the Twin Cities Ordnance Plant. In November, 1942, he was promoted to Executive Lieutenant. He worked a variable week similar to that of plaintiff Pfoser. All work was performed pursuant to orders from above. These orders would be in writing, and when delivered to plaintiff as shift commander they would be passed on to subordinates. Plaintiff's suggestions and recommendations would be relied upon by his superior. He toured the plant area to see that the men that were under him carried out orders properly, as he was responsible for the efficient operation of the shift under his charge. As an Executive Lieutenant he had nothing to do with the policy or management of defendant's business, and testified that more than twenty per cent of his working time was spent in doing ordinary guard work.

Ralph L. Dietrich

Plaintiff Dietrich entered the employ of defendant on September 26, 1942. Before commencing to work for defendant he had been in the regular Army for three years. In due course he was promoted to Executive Lieutenant. His duties as a shift commander consisted of initialing orders that came to him from the Guard Director and passing the same on to subordinates for initialing by them.

During his employment as an Executive Lieutenant this plaintiff testified that more than twenty per cent of his time was devoted to the ordinary or general work of the guards. Another twenty per cent of his time confined him to the office which was maintained for Executive Lieutenants, and the remainder of his time was devoted to getting out reports and contacting men under him on post or guard duty, which he described in his own words as a "tour of inspection". He testified that from twenty to forty minutes per day were spent by him in preparing daily reports. He admits that he exercised discretion in the performance of his work.

Opposing the claims of plaintiffs, defendant called as a witness one Carl L. Youngquist, who had no present connection with defendant, but who had been employed by defendant as Guard Director at its plant during the periods plaintiffs were employed there. This witness testified that all three plaintiffs were classified by defendant as "Captains", and that plaintiffs Nelson and Dietrich had complete charge of their particular shifts; that they reported to the Director of the Guards; that each of the plaintiffs could send any subordinate home for cause, and plaintiffs could take action in relation to such matters and report to the Director. According to this witness, the guards were rated by plaintiffs' subordinates and the entire force, from the Director down, was, in effect, under a regular Army officer. The work of the guards was nonmanual, and they were directed by plaintiffs how to perform their work. The Director did the hiring, but plaintiffs' suggestions in this respect were given consideration by him. Plaintiffs' recommendations relative to all matters pertaining to their work were considered and given weight by Youngquist.

Youngquist relied on Pfoser, who examined and graded the guards and helped to select guards for promotion. Pfoser had a Corporal for an assistant.

Plaintiffs could not change the general orders issued, but they might change a special order in a case of emergency. Youngquist further testified that the work described by plaintiffs Nelson and Dietrich "as of the same nature as that of Guards working under them" was in connection with their supervisory duties, which he described as "seeing that the Guards were doing their duty". Youngquist admits that these two plaintiffs did occasionally help the guards, but adds that this would not exceed ten per cent of the time they worked.

The issues raised present two questions for determination:

1. Do the plaintiffs come within coverage of the Act?

2. Were the plaintiffs, or any of them, exempt as bona fide executive or administrative employees within the meaning of the Act?

Defendant denies that plaintiffs were engaged in "commerce" or in the "production of goods for commerce" within the Act. The authorities are in conflict on the important question of whether, under facts similar to those existing in the present case, the plaintiffs are covered by the Act. Employers and their employees producing goods and materials for war purposes have been held to be engaged in the "production of goods for commerce" in the following cases: Bell et al. v. Porter, 7 Cir., 159 F.2d 117; Timberlake et al. v. Day & Zimmerman, Inc., D.C., 49 F.Supp. 28; Umthun v. Day & Zimmermann, Inc., 235 Iowa 293, 16 N.W.2d 258. Respectable authorities have reached a contrary conclusion. See Guy W. Barksdale v. Ford, Bacon & Davis, Inc., D.C.Ark., 70 F.Supp. 690; H. B. Deal & Co., Inc. v. Leonard et al., Ark., 196 S.W.2d 991. Decisions supporting defendant's contentions that plaintiffs were not engaged in "commerce or in the production of goods for commerce" are collected by Judge Lemley in a well-considered opinion in Barksdale v. Ford, Bacon & Davis, Inc., supra.

■ The burden of proof is upon plaintiffs in meeting defendant's contention relating to commerce. The record makes very questionable whether plaintiffs have carried their burden of proof in the foregoing respect.

■ Assuming that plaintiffs were employed in "commerce or in the production of goods for commerce", defendant further contends that they are not entitled to recover because they were employed in bona fide executive and administrative capacities, as defined and delimited by the Administrator within the meaning of Section 13(a)(1). The burden of proving the claimed exemptions is on the defendant.

■ The Act, being remedial, must be given a liberal construction. Helena Glendale Ferry Co. v. Walling, 8 Cir., 132 F.2d 616. As usual in these cases, the parties do not agree. That plaintiffs occupied positions analogous to general foremen in defendant's plant will not be denied. Certainly their rank corresponds to nothing less than that of foremen, but whether they were employed as General Managers, General Foremen, Captains of the Guard, Executive Lieutenants or ordinary guards, they would, nonetheless, be entitled to compensation for overtime if they qualified therefor under the provisions of the Act. Plaintiffs contend, assuming they were employed in a bona fide executive capacity, that their hours of work of the same nature as that performed by nonexempt employees exceeded twenty percent of the number of hours worked in the work-week by the nonexempt employees under their direction.

■ The cogent question here is, Did plaintiffs devote more than twenty percent of their work time doing work of the same nature as that performed by the nonexempt employees working under them? As Captains or Executive Lieutenants their duties required them to direct those who worked under them. Plaintiffs were not required to do the actual labor of an ordinary Guard, except on occasions when, in my opinion, it was necessary to instruct the Guards or to demonstrate to them how the work should be done. Concededly, at times they performed ordinary guard duties. Plaintiffs kept no records of the time they are here suing for. Necessarily, their testimony must be based upon estimates. They must reach back in memory over a long period of time to arrive at the figures

they rely upon. The salary paid them measured up in every respect to that paid an employee engaged in an executive or administrative capacity. This is something substantial in the way of evidence, tending to support defendant's claim for exemption. The Department of Labor, in its Bulletin of October 24, 1940, points this out in these words:

"However, it may be reiterated here that a salary criterion constitutes the best and most easily applied test of the employer's good faith in claiming that the person whose exemption is desired is actually of such importance to the firm that he is properly describable as an employee employed in a bona fide administrative capacity.

\*　　\*　　\*　　\*　　\*

"Also included in this group are persons who are in charge of a so-called functional department, which may frequently be a one-man department. The work of these employees is directly related to general business operations". Noonan v. Fruco Const. Co., 8 Cir., 140 F.2d 633.

In a like situation Judge Joyce, in Anderson v. Federal Cartridge Corporation, D.C., 62 F.Supp. 775, at page 783, had this to say: "There is a conflict in the evidence as to the amount of time these as well as other plaintiffs spent in work of the same nature as the non-exempt employees under their direction. Much of this evidence is unreliable because of an apparent misunderstanding or misinterpretation by the witnesses as to what should be included as 'work of the same nature.' Although the periods in question antedated the trial by some two years, many of these witnesses testified glibly to exact percentages of the time each plaintiff spent in doing exempt and non-exempt work. Assuming that such witnesses were engaged in doing some work while they were in defendant's employ, it is difficult to conceive how there is sufficient foundation for such categorical opinions. In respect to similar testimony in a wage and hour suit against the contract operator of the Iowa Ordnance plant, Judge Dewey said in Distelhorst v. Day & Zimmerman, D.C., 58 F.Supp. 334, 336: 'Percentages are difficult of determination where no records are kept and especially where all the witnesses know the percentages required, \* \* \*.' "

This is another case in which plaintiff employees made no claim for overtime under the Act until long subsequent to the discontinuance of their employment by defendant. This, of course, is not controlling, but neither does it assist parties who are solely dependent upon their own testimony and are vitally interested in the outcome of their cases. Phillips et al. v. Federal Cartridge Corporation, D.C., 69 F. Supp. 522.

The evidence discloses the plaintiffs to be in charge of a large number of guards looking to them for direction and guidance in performing the work required, and that in the supervising of the work of such subordinates plaintiffs exercised discretion and judgment. Smith et al. v. Porter et al., 8 Cir., 143 F.2d 292.

In my opinion the defendant has established by a clear preponderance of the evidence its claim of exemption under the Act.

Defendant may submit findings of fact and conclusions of law.

An exception is allowed plaintiffs.