## FEDERAL WALL PAPER CO. v. KEMPNER.

### (District Court, N. D. New York. August 23, 1917.)

1. COURTS ⊚⟳330—FEDERAL COURT—JURISDICTION—AMOUNT IN CONTROVERSY —AFFIDAVITS.

   The complaint and answer may be supplemented by affidavits as to the real value or amount in controversy on motion to dismiss on the ground that the amount is insufficient to give jurisdiction.

2. COURTS ⊚⟳330—JURISDICTION—AMOUNT IN CONTROVERSY—PLEADING—PRESUMPTION.

   Where the papers, on motion to dismiss on the ground that the amount in controversy is insufficient to give jurisdiction, fail to disclose what sum plaintiff received for property, which, having been bought of defendant, and rejected as not according to contract, it sold on refusal of defendant to accept return of same, it is fair to assume that it received what it says it was worth.

3. DAMAGES ⊚⟳117—ELECTION BETWEEN RULES OF DAMAGES.

   Where there are two rules of·damages which may be made applicable to a given case, plaintiff must adopt one or the other, and cannot have the benefit of both, taking so much of each as is most favorable to him.

4. DAMAGES ⊚⟳120(1)—BREACH OF CONTRACT.

   The damages for breach of contract are such as will, as near·as may be, place the injured party in the situation he would have occupied had the breach not occurred; what·he would have received if the contract had· been kept.

5. DAMAGES ⊚⟳40(2)—PROFITS.

   Profits lost by breach of contract, if not speculative and remote, are recoverable.

6. SALES ⊚⟳418(9)—BREACH OF CONTRACT—DAMAGES.

   Plaintiff having bought merchandise of defendant and paid therefor, and resold it and had it shipped to J., who rejected and returned it to plaintiff because not in accordance with defendant's contract, and plaintiff, on defendant refusing an offer of its return, having sold it on defendant's account, for its value, the measure of damages is the difference between the price paid and the value, plus profits lost on resale, together with the amount of charges for freight, loading and unloading, and cartage, which plaintiff was required by reason of the breach to pay.

7. COURTS ⊚⟳330—JURISDICTION—AMOUNT IN CONTROVERSY.

   The amount recoverable, and therefore the amount in controversy, is limited to the damages alleged and claimed in the complaint, which alleges no facts showing the damages to be greater, though figuring from the affidavits for plaintiff on the motion to dismiss, on the ground that the amount in controversy is insufficient to give the court jurisdiction, such damages exceed such amount.

8. COURTS ⊚⟳329—FEDERAL COURT—JURISDICTION—AMOUNT IN CONTROVERSY —ALLEGATION OF PLEADING.

   Aside from $500 paid plaintiff on contract of defendant to sell paper to plaintiff, the complaint for breach of contract by refusal to deliver, and the affidavit for plaintiff on motion to dismiss on the ground that the amount in controversy is insufficient to give jurisdiction, alleging only the contract price, what the paper would have been worth if delivered and as warranted, and that·by reason of defendant's failure to perform plaintiff was deprived of the profits which it reasonably would have earned, show recoverable damages and an amount in controversy only to the amount of the difference between the contract price and such alleged value, though the complaint alleges damages in a greater sum.

⊚⟳For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

**9. COURTS** ⊕⇒329—FEDERAL COURT—JURISDICTION—AMOUNT IN CONTROVERSY—DAMAGES—PLEADING.

Relative to jurisdiction of the federal court, when the damages recoverable on a given state of facts may be more than $3,000, or less, as the jury shall find, the amount alleged, claimed, and demanded will be deemed the amount in controversy, if the facts will justify a verdict of that amount; but when on the state of facts alleged the law fixes the damages at a certain sum, that sum is controlling on motion to dismiss on the ground that the amount in controversy is insufficient to give the court jurisdiction.

**10. COURTS** ⊕⇒329—FEDERAL COURTS—JURISDICTION—AMOUNT IN CONTROVERSY—PLEADING.

The complaint alleging contract of defendant to sell 112 tons of paper at $38 a ton, payment of $500 on the making of the contract, as provided thereby, delivery of 51 tons, and payment of $1,975 therefor, failure of that delivered to satisfy the contract, damages on account thereof, refusal of defendant to deliver the balance, and damages on account thereof, the $500, recoverable under the allegations, will not be considered included in the $1,975, relative to the amount in controversy, on the question of jurisdiction of the federal court.

At Law. Action by the Federal Wall Paper Company against Solomon S. Kempner. Motion by defendant to dismiss on the ground it appears on the face of the complaint and other papers submitted on this motion that the court has no jurisdiction of the cause, the real amount in controversy, exclusive of interest and costs, being less than $3,000, and that there is no diversity of citizenship, as plaintiff does not own the alleged cause of action. Motion denied.

Garten, Friesner & Shenfeld, of New York City, for plaintiff.
Wm. L. Pattisson, of Plattsburgh, N. Y., for defendant.

RAY, District Judge. [1] On this motion the complaint and answer have been supplemented by affidavits as to the real value or amount in controversy. This may be done.

The complaint alleges that about May 3, 1916, the plaintiff and defendant entered into an agreement whereby the defendant agreed to sell to the plaintiff and the plaintiff agreed to purchase from the defendant certain goods, etc., "consisting of approximately 112 tons of wall paper hangings at $38 per ton"; that a sample was exhibited to plaintiff's representative, and it was agreed that the bulk of such merchandise should correspond in quality and color with said samples, and defendant warranted that the wall paper hangings so agreed to be sold would be free from any and all defects and imperfections; that plaintiff should pay and did pay defendant $500 on such contract on entering into the contract, and it was agreed the balance should be paid when the paper hangings were delivered free on board to a common carrier at Plattsburgh, N. Y., for shipment to the consignee designated by the plaintiff, not later than June 1, 1916. In the first cause of action it is also alleged that plaintiff directed the defendant to deliver 51 tons of such hangings to Joliet Wall Paper Mills, at Joliet, Ill., and same was shipped accordingly, and plaintiff paid defendant $1,975.79 for same; that said Joliet Company rejected all of such goods shipped to it and returned same to plaintiff; that on examination it

was found that such merchandise did not conform to the samples, either in color or quality, but same were streaky and spotted and unmerchantable, and could not be used for manufacture into wall paper; that at the time of the making of such contract defendant was notified the paper was wanted for such purpose and defendant warranted it could be so used; that defendant was duly notified of the rejection and return of such wall paper, and of the fact that it did not answer to the contract, and plaintiff also offered to return such merchandise, and tendered same, but defendant refused to accept same; that the plaintiff fully performed such contract on its part.

As to damages resulting from the return, etc., of such 51 tons of such wall paper hangings, the plaintiff alleges that it was compelled to pay and did pay the freight for carrying said goods to and from Plattsburgh, N. Y., to Joliet, Ill., and the expense of loading and unloading same, and was deprived of the profit on such merchandise, referring to the 51 tons, that it would reasonably have earned had the goods been in accordance with the contract, and sustained *other damage,* all in the sum of $2,000. This is supplemented in the affidavits filed by the plaintiff in which it is stated that the 51 tons of paper shipped to Joliet, Ill., was worth only $20 per ton in fact; that it sold same by contract to Montgomery Ward & Co. for $2,560.25; that it paid freight to Joliet, $346.37; for loading and unloading at Joliet, $23.80; return freight, $336; and for unloading and cartage, $22.

Assuming this statement of damage made by plaintiff to be correct and true, inasmuch as it had the property or its proceeds, having sold same on defendant's account, and it was worth $20 per ton only, or $1,020, the plaintiff lost the difference between what it paid, viz., $1,975.79, and its true value, $1,020, or $955.79. It also lost the profit it would have made on the sale to Montgomery Ward & Co. if the merchandise has been as represented, $584.46. Also the freight paid both ways and cartage and loading and unloading charges at both points, in all $728.17. Total damage, first cause of action, $2,268.42.

[2] The papers fail to disclose what sum plaintiff received for the property on the sale, but it is fair to assume it received what it says it was in fact worth. This is the transaction complained of in the first cause of action, and this fully measures the plaintiff's loss and damage growing out of the purchase and sale and return to plaintiff of the 51 tons sent to Montgomery Ward & Co. If this merchandise had been such as the contract called for, the goods would have been accepted and retained by that company. The plaintiff presents the affidavit of Mr. Goldfarb, in which it is stated the 51 tons would have been worth $50 per ton if as represented, and the plaintiff would have had property worth $2,550, when it was worth only $20 per ton, or $1,020, making a loss of $1,530 in addition to the freight both ways and costs of loading and unloading and cartage, $728.17, and also what it paid for the 51 tons, $1,975.79, in all $4,253.96, less the actual value of the merchandise, $1,020.

[3] But when there are two rules of damage which may be made applicable to a given case, I understand the plaintiff must adopt the one or the other. He cannot have the benefit of both, taking so much of each as is most favorable to himself.

[4, 5] "In the case of a breach of contract, the damages awarded should be such as will, as nearly as may be, place the injured party in the situation he would have occupied if the breach had not occurred." Wicker v. Hoppock, 6 Wall. 94, 18 L. Ed. 752; 5 Encyclopedia of U. S. Reports, 169. "The amount which would have been received, if the contract had been kept, is the measure of damages if the contract is broken." Pierce v. Tennessee, etc., 173 U. S. 1, 19 Sup. Ct. 335, 43 L. Ed. 591; Benjamin v. Hillard, 23 How. 149, 16 L. Ed. 518. Profits are recoverable if not speculative and remote.

[6, 7] In the instant case, as to these 51 tons of paper, if the merchandise had been according to the contract the plaintiff would have received on the sale to Montgomery Ward & Co. the sum of $2,560.25, which would have reimbursed plaintiff the amount paid for same, with a profit of $584.46, and it would not have been compelled to pay the freight, loading and unloading, and cartage charges, $728.17. The amount paid defendant for the merchandise was $1,975.79, which, added to the profit and freight, loading, and cartage charges paid, makes $3,288.42. The plaintiff sold the goods on defendant's account presumably for $1,020, which it is entitled to retain, and which sum defendant is entitled to have deducted in arriving at plaintiff's damages. Deducting same, and we have the plaintiff's damages, shown by affidavit, $2,-268.42, growing out of the first cause of action. But the plaintiff itself places its damage growing out of the first cause of action at $2,000, and after alleging the facts, not items, says:

"That by reason of the aforesaid breach of the said agreement by the defendant, plaintiff was compelled to and did pay the freight for carrying said goods to and from Plattsburgh, New York, to Joliet, Illinois, and the expense of loading and unloading the same, and was deprived of the profit on said merchandise that it would reasonably have earned had the defendant performed the said agreement on his part and delivered merchandise in conformity with the samples and colors ordered by the plaintiff, and sustained other damage, all in the sum of two thousand ($2,000) dollars."

I do not see that a greater sum or amount can be in controversy than the plaintiff claims in the pleading.

[8] When we come to the second cause of action, we have a different proposition. In this cause of action plaintiff refers to, and by reference reiterates, the paragraphs of the first cause of action numbered 1 to 6, inclusive. It then alleges a demand for the balance of such wall paper hangings agreed to be sold by defendant, aggregating 61 tons, an offer, readiness and willingness to accept, receive, and pay for same, and a neglect and refusal to deliver, and that plaintiff fully performed all the terms of the contract relating thereto. Then, "that by reason of the failure of the defendant to perform the said agreement, plaintiff was deprived of the profits which it reasonably would have earned if the defendant had performed the said agreement, and sustained damage in the sum of one thousand one hundred ($1,100) dollars." No facts are stated in the complaint or in the affidavit alleging or indicating that plaintiff would have earned any profits, except as it is stated the 61 tons of wall paper hangings would have been worth $50 per ton, or $3,050, if delivered and as warranted and

represented, and for which it was to pay $38 per ton, or $2,318. The difference, or profit, if the hangings had been delivered, is $732. On the allegation of the complaint and the plaintiff's affidavits by no possibility can plaintiff's damage, aside from the $500 paid down, growing out of the second cause of action, exceed $732. Adding this to the $2,000 damages claimed and demanded under the first cause of action, and the sum or amount in controversy is $2,732, or less than $3,000. If, however, we should add the $732 to the $2,268.42, figuring up the items of the first cause of action as shown in the affidavits, we would have a total of $3,000.42.

What are the legal principles applicable, and which fix the recovery of the plaintiff, on the allegations made in the complaint and the facts shown in the affidavits?

[9] When the damages recoverable on a given state of facts may be more than $3,000, or less, as the jury shall find, the amount alleged, claimed, and demanded will be deemed the amount or value in controversy if the facts will justify a verdict of that amount; but when, on a state of facts alleged, the law fixes the damages at a certain sum, that sum is controlling on such a motion as this. In such case it appears that the amount in controversy cannot be more than that fixed by the law.

As to the second cause of action set out in the complaint under consideration, the law fixes the damages at $732, not considering the $500 paid down. As to the first cause of action the plaintiff in its complaint demands only $2,000, and no facts are alleged in such complaint which show the damages to be greater. Figuring from the affidavits filed in behalf of the plaintiff, and such damages exceed $2,000, making the total $3,000.42, as stated.

I think this allegation of the complaint controls in fixing the damages recoverable under the first cause of action; that while the items given in the affidavits aggregate a greater sum, the plaintiff, without amending his allegation of damage in the first cause of action, would be limited to a recovery of $2,000 under the first cause of action, and is limited by the law on the facts alleged in the second cause of action, supplemented by the affidavits, to a recovery of $732, under such second cause of action, aside from the $500 paid down, making a total of $2,732.

[10] These figures do not take into account the $500 paid down on the contract, unless we assume such $500 formed part of the $1,975.-79 paid for the 51 tons sent to Joliet, Ill. The complaint does not so state, but does state the 51 tons were paid for by the plaintiff. Then, as to the recovery, the plaintiff, if entitled to recover, may recover the $500 paid down in addition to the other damage, profit he would have made if the wall paper hangings had been delivered as per contract. Therefore the plaintiff, while limited by its statement of damages sustained and by the demand for judgment, may recover $3,100, exclusive of interest and costs, depending on the evidence. There has been no application for an order making the complaint more definite and certain as to damages, or for a bill of particulars as to damages sustained.

An action was brought by one Louis G. Hart in the Supreme Court of the state to recover damages for the breach of this contract. The venue was laid in New York county, but on motion the venue was changed to Clinton county, where this plaintiff resides. Thereupon that action was discontinued. Then the said Hart assigned the alleged cause of action back to said Federal Wall Paper Company, this plaintiff, and such assignment is in evidence here and this action was brought. In that action the damages were laid at $3,000. We may well *suspect* that this plaintiff is seeking to avoid a trial in Clinton county, and that the damages alleged are enhanced for the purpose of giving the United States District Court jurisdiction, but I cannot say that this is proved or that a question of fact is presented for decision here.

I think the motion to dismiss must be denied. There will be an order accordingly.