STEPHEN UMTHUN, Appellant, v. DAY & ZIMMER-
MANN, INC., Appellee.

No. 46585.

NOVEMBER 14, 1944.

J. L. Thomas, of Burlington, for appellant.

Ben P. Poor, of Burlington, for appellee.

GARFIELD, J.—The question upon this appeal is whether
plaintiff was engaged "in the production of goods for com-
merce" within the meaning of the Fair Labor Standards Act,
herein called "the Act" (29 U. S. C., sections 201–219). The.

case was tried to the court without a jury. The essential facts were stipulated.

At all times involved here defendant, a private corporation, as an independent contractor and not as agent, operated the Iowa Ordnance Plant near Burlington, under a contract with the United States Government by which the government paid defendant a fixed fee plus all expenses. The government shipped component parts of bombs to the plant, where they were painted and dried, then loaded with explosives and otherwise processed. When finished the bombs were shipped out of the plant by the government for use by the armed forces in the war effort. The greater portion of both incoming and outgoing shipments was interstate.

From December 21, 1941, to May 29, 1943, plaintiff was employed by defendant either as a building foreman or an assistant building foreman. During many weeks of this period plaintiff worked in excess of forty hours per week for which he received no overtime compensation. He was in charge of crews engaged in processing the bombs that were shipped to and from the plant. The tools and equipment plaintiff used, the premises upon which he worked, and the products with which he dealt belonged to the government. There can be no question that plaintiff was engaged in "the production of goods." The lower court held, however, that plaintiff was not engaged in "the production of goods for commerce" within the meaning of the Act, and on this ground dismissed the petition. We are unable to agree. We conclude plaintiff was engaged in the production of goods for commerce within the meaning of the Act.

It is conceded the question presented is one of statutory construction. No issue of constitutionality is involved. We may observe, however, that the constitutionality of the Act was unanimously upheld in United States v. Darby (Stone, J.), 312 U. S. 100, 61 S. Ct. 451, 85 L. Ed. 609, 132 A. L. R. 1430. There are also many other decisions to the same effect. See annotations 132 A. L. R. 1443, 1444; 130 A. L. R. 272, 273. While defendant concedes that Congress could have made the Act applicable to interstate transportation by the government, it argues there is nothing in the Act to show it intended to do so.

Defendant contends the finding below has substantial evi-

dence to support it and is conclusive upon this appeal. Attention is called to Rule 334, Iowa Rules of Civil Procedure, which states: "* * * findings of fact in jury-waived cases shall have the effect of a special verdict." This contention is without merit. The evidence, in the form of stipulated facts, is undisputed. This appeal presents nothing but a question of law: the meaning of the Act as applied to undisputed facts. The trial judge erred not in his findings of fact but in his conclusions of law. See In re Will of Hagan, 234 Iowa 1001, 1007, 14 N. W. 2d 638, 641, 152 A. L. R. 1296, and cases cited; State ex rel. Rankin v. Peisen, 233 Iowa 865, 868, 10 N. W. 2d 645, 647.

It has been well established that the Act, which is remedial in character, with a humanitarian end in view, is to be liberally construed. Fleming v. Hawkeye Pearl Button Co. (Gardner, J.), 8 Cir., Iowa, 113 F. 2d 52, 56.

The Wage and Hour Division of the United States Department of Labor has interpreted the Act to include such an employment as that involved here. This construction of the statute by the administrative department charged with its enforcement, although not binding on us, should be given our respectful consideration. Overnight Motor Transp. Co. v. Missel (Reed, J.), 316 U. S. 572, 580, 62 S. Ct. 1216, 86 L. Ed. 1682, 1689, and citations n17; Fox v. Standard Oil Co. (Cardozo, J.), 294 U. S. 87, 55 S. Ct. 333, 79 L. Ed. 780, 787, and citations; Fleming v. A. II. Belo Corp. (Hutcheson, J.), 5 Cir., Tex., 121 F. 2d 207, 213, 214, and citations [certiorari granted 314 U. S. 601, 62 S. Ct. 137, 86 L. Ed. 484, affirmed 316 U. S. 624, 62 S. Ct. 1223, 86 L. Ed. 1716]; State ex rel. Pew v. Independent Order of Foresters, 226 Iowa 1339, 1344, 286 N. W. 425, and citations.

So much of the Act as is pertinent here provides:

"Sec. 203(b). 'Commerce' means trade, commerce, transportation, transmission, or communication among the several States or from any State to any place outside thereof.

"Sec. 203(d). 'Employer' includes any person acting directly or indirectly in the interest of an employer in relation to an employee but shall not include the United States or any State or political subdivision of a State * * *.

"Sec. 207(a). No employer shall * * * employ any of his employees who is engaged * * * in the production of goods for

296

commerce * * * (3) for a workweek longer than forty hours * * * unless such employee receives compensation for his employment in excess of the hours above specified at a rate not less than one and one-half times the regular rate at which he is employed.

"Sec. 216(b). Any employer who violates the provisions of section * * * 207 of this title shall be liable to the * * * employees affected in the amount of their * * * unpaid overtime compensation * * * and in an additional equal amount as liquidated damages."

Determination of whether the Act is applicable depends not on the nature of the employer's business but upon the character of the employee's activities. Overstreet v. North Shore Corp., 318 U. S. 125, 63 S. Ct. 494, 498, 87 L. Ed. 656; Warren-Bradshaw Drilling Co. v. Hall, 317 U. S. 88, 63 S. Ct. 125, 87 L. Ed. 83; Kirschbaum Co. v. Walling, 316 U. S. 517, 62 S. Ct. 1116, 86 L. Ed. 1638, 1648; Clyde v. Broderick, 10 Cir., Colo., 144 F. 2d 348, 351, and cases cited.

The meaning of the Act should, in the first instance at least, be sought in its language and if that is plain, the sole function of the court is to give it effect. Fleming v. Hawkeye Pearl Button Co. (Gardner, J.), 8 Cir., Iowa, 113 F. 2d 52, 55. The Act itself defines "commerce." The common understanding of a term, if it were at variance with this definition, is not to be substituted for it. Fox v. Standard Oil Co. (Cardozo, J.), 294 U. S. 87, 55 S. Ct. 333, 79 L. Ed. 780, 787. See, also, State v. City of Des Moines, 221 Iowa 642, 644, 648, 266 N. W. 41.; Sandberg Co. v. Iowa State Board, 225 Iowa 103, 107, 278 N. W. 643; Kistner v. Iowa State Board, 225 Iowa 404, 410, 280 N. W. 587.

The definition of "commerce" found in section 203(b) includes "transportation * * * from any State to any place outside thereof." The plain meaning of this language seems to include the movement of these bombs to and from this ordnance plant. Defendant argues, however, that the shipment of the bombs is not commerce because made by the government. Reliance is placed upon the much-quoted statement of Justice Story, in United States v. Hoar, 2 Mason 311, Fed. Cas. No. 15373, to the effect that the government is not included within the terms of a general statute unless it is "clear from the nature

of the mischiefs to be redressed, or the language used, that the government itself was in contemplation of the legislature * * *."

Defendant's argument cannot be sustained. In the first place, it would seem to be "clear from the nature of the mischiefs [sought] to be redressed, or the language used" that the mere fact the government ships these bombs does not mean that their transportation is not commerce. See, as bearing on this question, State v. City of Des Moines, 221 Iowa 642, 647, 266 N. W. 41. The evils which the Act was designed to improve have been repeatedly pointed out. Indeed, sections 202(a) and 202(b) of the statute itself provide that it was intended to eliminate, in industries engaged in the production of goods for commerce, labor conditions detrimental to the maintenance of the minimum standard of living necessary for health, efficiency, and well-being of workers, and the removal of the burdens on commerce caused by such substandard labor conditions.

Among decisions which recognize these purposes of the Act are United States v. Darby (Stone, J.), 312 U. S. 100, 61 S. Ct. 451, 85 L. Ed. 609, 614, 132 A. L. R. 1430; Fleming v. Warshawsky & Co. (Major, J.), 7 Cir., Ill., 123 F. 2d 622, 626; Fleming v. A. H. Belo Corp. (Hutcheson, J.), 5 Cir., Tex., 121 F. 2d 207, 215. Assuming the wisdom of the Act, a matter with which we are not concerned, it seems clear that the evils at which the legislation is aimed will more probably be improved if the Act is not held inapplicable merely because the government is the shipper of the ammunition. Such a holding would deny to large numbers of employees the advantages of the Act.

The statement of Justice Story in the Hoar case is by no means a hard and fast rule by which the sovereign is excluded from general terms of a statute; the purpose, subject matter, context, legislative history, and executive interpretation are aids to construction which may indicate an intent to bring the sovereign within the scope of the law. United States v. Cooper Corp. (Roberts, J.), 312 U. S. 600, 61 S. Ct. 742, 85 L. Ed. 1071, 1074, 1075.

Cases in which the doctrine of the Hoar case have been applied are of two classes: (1) Those where the act, if the sovereign were not excluded, would deprive it of a recognized or established prerogative title or interest. A classic example of

these cases is United States v. Hoar itself, holding the sovereign is exempt from general statutes of limitations. (2) Those where the act would work obvious absurdity if the public or its officers were not held to be impliedly excluded, as, for example, the application of a speed statute to a policeman pursuing a criminal or to a fire department responding to a fire alarm. Nardone v. United States (Roberts, J.), 302 U. S. 379, 58 S. Ct. 275, 82 L. Ed. 314, 317. Plainly, this case does not fall within either of these classes. The government is not a party to the case. It is not resisting plaintiff's action but on the contrary the Department of Labor has filed an amicus curiae brief urging a reversal. Plaintiff was not an employee of the government but of a private corporation.

There is another recognized exception to the rule, if it can be called such, of United States v. Hoar. Where a statute is for the public good or to prevent injury and wrong, the sovereign is bound by it although not particularly named therein. Nardone v. United States, 302 U. S. 379, 58 S. Ct. 275, 82 L. Ed. 314, 318; United States v. Herron, 20 Wall. (U. S.) 251, 22 L. Ed. 275, 276. It would seem that the Act involved here was intended for the public good and to prevent injury and wrong.

It is perhaps worthy of mention that section 203(d) of the Act specifically excepts from its benefits employees of the United States or any state or political subdivision thereof. It may be assumed that if Congress had intended also to exempt from the statute employees of an independent contractor with the government, such as this defendant, it would have so provided by enlarging the exception. See, on this question, State v. City of Des Moines, 221 Iowa 642, 648, 266 N. W. 41.

It has been repeatedly held that interstate commerce in the legal sense is not limited to what is commonly understood as commercial transactions. The following are a few examples: Transportation of one's own goods (intoxicating liquor for personal use), United States v. Hill, 248 U. S. 420, 39 S. Ct. 143, 63 L. Ed. 337; movement of indigent persons across state lines, "It is immaterial whether or not the transportation is commercial in character." Edwards v. California, 314 U. S. 160, 172, 62 S. Ct. 164, 166, 86 L. Ed. 119, 125; taking a woman

across state lines for an, immoral purpose but not commercial. vice, Caminetti v. United States, 242 U. S. 470, 37 S. Ct. 192, 61 L. Ed. 442, L. R. A., 1917F, 502, Ann. Cas., 1917B, 1168; taking a kidnaped person across a state border, Gooch v. United States, 297 U. S. 124, 56 S. Ct. 395, 80 L. Ed. 522; same as to a stolen automobile, Brooks v. United States, 267 U. S. 432, 45 S. Ct. 345, 69 L. Ed. 699, 37 A. L. R. 1407; diseased stock, Reid v. Colorado, 187 U. S. 137, 23 S. Ct. 92, 47 L. Ed. 108.

Our conclusion finds support in cases which have arisen under this Act. In Timberlake v. Day & Zimmerman, Inc. (Dewey, J.), D. C., Iowa, 49 F. Supp. 28, 33, under identical facts, ·in the face of the same contentions by the same able counsel for this defendant, it was held that the movement of these bombs by the government is commerce within the meaning of the Act: ''The act, it seems to me, was intended by the Congress to be broad enough to include such transportation.''

The Timberlake case is cited with approval by the Circuit Court of Appeals, in Walling v. Haile Gold Mines (Dobie, J.), 4 Cir., S. C., 136 F. 2d 102, 104, where an employee of a mine in South Carolina was held entitled to the protection of the Act while engaged in mining gold all of which was sent by registered mail to the government mint in Philadelphia. The district judge, who was reversed, had held that the shipment of gold pursuant. to the order of the government was an administrative act of. the government rather than a shipment in commerce. The Haile case cites numerous supreme court decisions which have established the ''principle that the power of exclusion from interstate commerce does not depend on either the 'commercial' nature of the article or the existence of competition.''

In Clyde v. Broderick (Murrah, J.), 10 Cir., Colo., 144 F. 2d 348, plaintiffs were employees of a contractor who was constructing an ordnance plant for the government. The employees, who unloaded tools and equipment sent in from points outside the state for use on the project and later boxed the equipment for shipment outside the state, were held to be engaged in commerce within the meaning of the Act. The trial judge's decision, which was relied on here in the court below, was that since the property was shipped across state lines for the convenience of the government, interstate commerce was not

involved but only an administrative act of the government. See Clyde v. Broderick, D. C., Colo., 52 F. Supp. 533. In reversing the lower court, the Court of Appeals said, at page 351 of 144 F. 2d:

"There is nothing in the Fair Labor Standards Act which indicates an intent or purpose to exempt from its coverage employees whose activities relate to the movement in interstate commerce of personally owned goods of an employer or goods moving interstate for the convenience of the United States Government. The Act creates no such exemptions and we cannot."

In Walling v. Patton-Tulley Transp. Co. (Simons, J.), 6 Cir., Tenn., 134 F. 2d 945, it was held, reversing the district court, that employees engaged on dike and revetment construction along the Missouri and Mississippi Rivers, under contracts of their employer with the United States, were engaged in commerce within the scope of the Act.

A statement in National Labor Relations Bd. v. Idaho-Maryland Mines Corp. (Mathews, J.), 9 Cir., Cal., 98 F. 2d 129, 131, is relied on by defendant. The case involved the applicability of the National Labor Relations Act (29 U. S. C., section 160) to a corporation operating mines in California which delivered the major part of its products in its own airplanes to the United States mint in San Francisco. The remainder of its products were sold and delivered to a refinery in California, which in turn refined the alloy and sold it to the San Francisco mint. The mining corporation's product was segregated in the San Francisco mint for about thirty days, then commingled with various other products and its identity destroyed. The finished product was later sent by the mint in San Francisco to the mint in Denver. The court held the mining corporation's labor activities were wholly intrastate and that the Labor Relations Act was not applicable. In the opinion this statement is made, upon which defendant relies, referring to the shipments of the finished product from the San Francisco mint to the Denver mint:

"We regard such shipments, not as commercial transactions, but as administrative acts of Government. If, however, such

acts may be said to constitute commerce, it is a commerce to which respondent's activities are not closely, intimately or substantially related, and which respondent's labor practices do not directly or substantially affect."

The case from which we have just quoted was considered in Timberlake v. Day & Zimmerman, Inc., D. C., Iowa, 49 F. Supp. 28, 32, and the conclusion reached that the above statement was dictum or in any event the court apparently had some doubt as to its correctness. It seems to us there is a distinction between the Idaho-Maryland Mines case and ours in that there the product was not shipped in interstate commerce until after it had been stored in the San Francisco mint for a time and there commingled with other products so that its identity was destroyed. In any event, we are not justified in giving controlling effect here to the statement in the opinion upon which defendant relies in the face of decisions construing the Fair Labor Standards Act.

After careful consideration of all contentions made, the judgment is—Reversed.

MANTZ, C. J., and BLISS, OLIVER, MILLER, WENNERSTRUM; and MULRONEY, JJ., concur.