### MOEHL et al. v. E. I. DU PONT DE NEMOURS & CO.

#### No. 45C1749A.

District Court, N. D. Illinois, E. D.

Jan. 10, 1947.

428

Samuel M. Lanoff, Chicago, Ill., Edwin A. Halligan, Chicago, Ill., John P. Haley, Joliet, Ill., for plaintiff.

Frank F. Fowle, Jr., Pope & Ballard, Chicago, Ill., for defendant.

LA BUY, District Judge.

This action is brought by approximately two hundred plaintiffs employed as patrolmen or guards by defendant, E. I. Du Pont de Nemours & Company, to recover unpaid overtime compensation under the Fair Labor Standards Act, 29 U.S.C.A. §§ 201–219. Defendant operated the Kankakee Ordnance Works located near Kankakee, Illinois, under a cost-plus-fixed-fee contract with the Government. The complaint is in two counts. the first being based on the Fair Labor Standards Act, and the second being based on Executive Order No. 9240, 40 U.S.C.A. § 326 note. Defendant has filed its motion to dismiss the complaint.

In support of its motion to dismiss Count I defendant contends that (1) plaintiffs cannot show they were engaged in the production of goods for commerce since the materials produced did not enter "commerce" within the meaning of the Act, and (2) plaintiffs can not show they were engaged in the production of goods for commerce since the materials produced were not "goods" within the meaning of the Act.

The Kankakee Ordnance Works here involved was one of the government owned munitions plants built for the War Department for the production of explosives. The buildings, machinery and the land were owned by the United States Government. Ownership of all materials worked on at the plant, completed or in the process of construction or manufacture and all of the finished or semi-finished products, was in the government and the government agreed to bear all risk incident to such ownership. Materials and equipment necessary for the operation of the plant were furnished directly by the government or purchased by defendant for the government. The Kankakee Ordnance Works was commanded by an army officer who maintained his headquarters at the plant. Through his large staff or military and civilian personnel he exercised responsibility for the safety and defense of the entire reservation, for the preservation and proper use of all government property, for the enforcement of laws and War Department regulations, and for the protection of the public interest in all matters relating to the administration of the contract with defendant.

The defendant is an independent contractor who had full and complete supervision of all employees engaged in the processing, manufacturing, assembling, loading, shipping, guarding, and all other activities of the ordnance plant, including the hiring and firing of employees. As an independent contractor the defendant was not an agency of the government.

█ The functions performed by these plaintiffs as patrolmen or guards have been held to be necessary to the production of goods for interstate commerce within the meaning of the Fair Labor Standards Act. Armour & Co. v. Wantock, 1944, 323 U.S. 126, 65 S.Ct. 165, 89 L.Ed. 118; Timberlake v. Day & Zimmerman, D.C.Iowa 1942, 49 F.Supp. 28.

The issues presented by defendant's motion to dismiss is whether the Fair Labor Standards Act applies to employees whose activities relate to the production and movement of interstate commerce of goods manufactured by a cost-plus-fixed-fee contractor which goods are wholly owned by the United States and which are shipped across state lines by order of the United States. It is stated the property was shipped across state lines for the convenience of the government and was not therefore interstate commerce "but a mere administrative act of the government" in the exercise of its sovereign power in the conduct of war.

The motion was made before the decision on December 10, 1946 of our Circuit Court of Appeals in Bell v. Porter et al., 7 Cir., 159 F.2d 117, 118, wherein the question of participation of the government in interstate commerce was considered. The court in that case said:

"On the first point raised it will be enough to say that cost-plus-fixed-fee contractors with the Government engaged in war production, are not agents of the Government and do not share the Government's sovereign immunities. State of Alabama v. King & Boozer, 314 U.S. 1, 62 S.Ct. 43, 86 L.Ed. 3, 140 A.L.R. 615; Curry v. United States, 314 U.S. 14, 62 S. Ct. 48, 86 L.Ed. 9. And it has been held

that production of goods for interstate transportation by or for the Government is production for commerce within the meaning of the Act.

"As to the second point, we note that the Act is made applicable to any employee 'who is engaged in commerce or in the production of goods for commerce.' Section 7(a), 29 U.S.C.A. § 207(a). By § 3(b) of the Act, commerce is defined as 'trade, commerce, transportation * * * from any State to any place outside thereof.' But nowhere in the Act is it suggested that Congress intended that transportation effected by the Government or of Government goods be treated differently from all other transportation; hence we believe, as the court did in the case of Atlantic Co. v. Walling, 5 Cir., 131 F.2d 518, that when Congress defined 'commerce' in the Act, it intended to give the term the broadest possible meaning, so as to include all transactions, conditions and relationships as have been heretofore known and acknowledged as constituting commerce in the constitutional sense."

▬ This broad and all-inclusive interpretation of the word "commerce" is reiterated in Clyde v. Broderick, 10 Cir., 1944, 144 F.2d 348; Timberlake v. Day & Zimmerman, supra; Umthun v. Day & Zimmermann, 1944, 235 Iowa 293, 16 N.W. 2d 258. There is nothing in the Fair Labor Standards Act which shows an intent or purpose to exclude employees whose activities relate to the movement of commerce for the convenience of the government. The principle has been often stated that where a statute is for the public good or to prevent injury and wrong, the sovereign is bound by it although not particularly named therein. Nardone v. United States, 1937, 302 U.S. 379, 58 S.Ct. 275, 82 L.Ed. 314; United States v. Herron, 1873, 20 Wall. 251, 22 L.Ed. 275; Umthun v. Day & Zimmermann, supra.

▬ The defendant raises the theory that the goods which plaintiffs were engaged in the production of were not goods as defined under the Fair Labor Standards Act. The main contention being that all materials received at the Kankakee Ordnance plant had already come to rest in the hands of the ultimate consumer, i. e., the United States Government and were therefore beyond the application of the Act. While it is true that manufacturing and processing alone do not constitute commerce, United States v. Darby, 1941, 312 U.S. 100, 657, 61 S.Ct. 451, 85 L.Ed. 609, 132 A.L.R. 1430, the acquiring of goods interstate, the processing and shipment, or the intention that they be shipped in interstate commerce constitute one and the same flow of commerce. The stoppage of goods for purposes of processing does not itself stop the flow of such commerce. Stafford v. Wallace, 1922, 258 U.S. 495, 42 S.Ct. 397, 66 L.Ed. 735, 23 A.L.R. 229; Swift & Co. v. United States, 1905, 196 U.S. 375, 25 S.Ct. 276, 49 L.Ed. 518; United States v. Darby supra; Timberlake v. Day & Zimmerman, supra. When goods once enter the channels of interstate commerce they acquire an interstate status which continues until the interstate journey ends, and if during such journey they are manufactured or processed with the knowledge on the part of the employer that they are to be shipped in interstate commerce, such an employer comes within the provisions of the Act even though the goods may be delivered to a third party for shipment. Warren-Bradshaw Drilling Co. v. Hall, 1942, 317 U.S. 88, 63 S.Ct. 125, 87 L.Ed. 83; Santa Cruz Fruit Packing Co. v. N.L. R.B., 1937, 303 U.S. 453, 58 S.Ct. 656, 82 L.Ed. 954; .N.L.R.B. v. Jones & Laughlin, 1937, 301 U.S. 1, 57 S.Ct. 615, 81 L.Ed. 893, 108 A.L.R. 1352; Clyde v. Broderick, supra; United States v. Darby, supra; Timberlake v. Day & Zimmerman, supra.

Count II of the complaint alleges a claim for wages due under Executive Order 9240 allowing double time for work on the seventh consecutive day of a regularly scheduled work week and for work on holidays. The basis of the court's jurisdiction is alleged to be under 28 U.S.C.A. § 41 [now § 1331 et seq.], and the jurisdiction amount is alleged to exceed $3000 as to each plaintiff.

Defendant's motion to dismiss this count is based on the ground of (1) lack of jurisdictional amount which is substantiated by submission of an affidavit of an accountant employed by defendant averring that at the maximum the only amount which

could be involved as to each plaintiff would be $2712.00, (2) the fact that jurisdiction cannot be sustained since Executive Order 9240 is not a suit under the Constitution or laws of the United States.

Question has been raised by plaintiffs as to the propriety of filing affidavits in support of a motion to dismiss. There is some conflict of authority on the use of such affidavits, but most of the considered cases have held that an affidavit may be employed in support of such motion. KVOS, Inc., v. Associated Press, 1936, 299 U.S. 269, 57 S.Ct. 197, 81 L.Ed. 183; Carroll v. Morrison Hotel Corp., 7 Cir., 1945, 149 F.2d 404; Boro Hall Corp. v. General Motors Corp., 2 Cir., 1942, 124 F.2d 822, certiorari denied 317 U.S. 695, 63 S.Ct. 436, 87 L.Ed. 556; Federal Wall Paper Co. v. Kempner, D.C.1917, 244 F. 240, F. E. Myers & Bros. Co. v. Goulds Pumps, Inc., D. C.N.Y.1946, 5 F.R.D. 132; San Francisco Lodge No. 68 v. Forrestal, D.C.Cal.1944, 58 F.Supp. 466.

■ However, where the complaint on its face shows the amount in dispute to exceed $3000 and there are no facts alleged from which the court can determine as a matter of law that there cannot be recovery of the jurisdictional amount, the question will not be determined on ex parte affidavits. When a suit wherein the jurisdictional amount in controversy is properly traversed by motion or plea it calls for substantial proof on the part of the plaintiff of facts justifying the conclusion that the suit involves the necessary sum. Hague v. CIO, 1939, 307 U.S. 496, 59 S.Ct. 954, 83 L.Ed. 1423. The affidavit of defendant is permitted but plaintiff must be given the opportunity to support his allegation. The court will defer decision until trial since the complaint shows a bona fide claim within the court's jurisdiction and "reasonable plausibility in support thereof". York County Sav. Bank v. Abbot, C.C.Me.1904, 131 F. 980, 982.

The claimed right to recover the double time for work performed on the seventh consecutive work day or for work performed on holidays is based on Executive Order 9240, issued under the authority of the Stabilization Act of 1942, Section 961, 50 U.S.C.A.Appendix:

' "In order to aid in the effective prosecution of the war, the President is authorized and directed, on or before November 1, 1942, to issue a general order stabilizing prices, wages, and salaries, affecting the cost of living; * * *. The President may, except as otherwise provided in this Act, thereafter provide for making adjustments with respect to prices, wages, and salaries, to the extent that he finds necessary to aid in the effective prosecution of the war or to correct gross inequities: * * *."

■ It is contended that such claim under this Order is not a suit "[arising] under the Constitution or laws of the United States" within the Judicial Code, 28 U.S. C.A. § 41(1) [now § 1331] and therefore fails to give this court jurisdiction. Defendant cites Beck v. Johnson, C.C.Ky. 1909, 169 F. 154, 162 to the effect that rules and regulations made by executive officers under the authority of Congress cannot be construed to be laws. However, the action in that case was also based upon other regulations issued under two sections of the statute which expressly authorized the recovery of damages for disregard of the regulations thereunder. As to those regulations the court said:

"In other words, we think that when Congress used that phrase it meant acts of Congress and not executive rules and regulations, unless * * * the recovery of damages was expressly authorized by statute for a disregard of the regulations made thereunder."

Such a provision was made by Section 971 of the Stabilization Act, '50 U.S.C.A.Appendix, providing that any violation of the Act or of any regulation promulgated thereunder be punishable.

In United States v. Gilbertson, 7 Cir., 1940, 111 F.2d 978, 980, it was stated:

"That the extensions of the restriction here involved were made by Executive Order pursuant to the statute of 1906 rather than directly by the statute we do not consider of any significance, since administrative regulations, properly made, have been held to be equivalent to law. See Hampton, Jr., & Co. v. United States, 276 U.S. 394, 48 S.Ct. 348, 72 L.Ed. 624; Mary-

land Casualty Co. v. U. S., 251 U.S. 342, 40 S.Ct. 155, 64 L.Ed. 297."

For the above reasons the court overrules defendant's motion to dismiss plaintiff's complaint. An order not inconsistent herewith may be presented for entry.