[No. 31507. Department One. November 27, 1950.]

WEST NORMAN TIMBER, INC., *Appellant,* v. THE STATE OF WASHINGTON *et al., Respondents.*[1]

[1]Reported in 224 P. (2d) 635.

*Theodore B. Bruener,* for appellant.

*The Attorney General* and *E. P. Donnelly, Assistant,* for respondents.

BEALS, J.—The plaintiff, West Norman Timber, Inc., by its complaint filed in the superior court for Thurston county, alleged its existence as a Washington corporation; that the defendant J. V. Rogers is the director of the department of conservation and development of the state of Washington (hereinafter referred to as the department); that the division of forestry is a division of the department; that defendant B. L. Orell is the supervisor of that division; that, at all times mentioned in the complaint, the state of Washington was the owner of a timbered section of school land described as section 36, township 12 north, range 6 west W. M., in Pacific county; that, prior to April 27, 1946, an application for the sale of the timber on this section was filed with the commissioner of public lands of the state of Washington (hereinafter referred to as the commissioner), who caused the timber to be cruised and appraised; that, in the appraisal report, it was recommended that two 2½ acre tracts (one in the northwest quarter and the other in the southeast quarter), particularly described in the complaint, be reserved from sale as seed areas, and that, April 27, 1946, the commissioner made an order of sale of the timber, which contained the following provision:

" 'No trees to be cut from seed areas and all seed areas are to be trailed by bulldozing around the area. Seed areas are located in the NE ¼ of NW ¼ and NW ¼ of SE ¼ of said Section 36.' "

Plaintiff alleged that, thereafter, the timber on section 36 was offered for sale pursuant to statute; that, June 4, 1946, the timber was sold to West Coast Plywood Company, a Washington corporation, for $355,738.37; that the commissioner issued to the purchaser named a bill of sale for the timber, exclusive of the five acres reserved as seed areas; that, in purchasing the timber, the purchaser was acting for itself and two other corporations; that, thereafter, the

three purchasers organized West Norman Timber, Inc., for the sole purpose of logging the timber, and that the bill of sale for the timber was duly assigned to the plaintiff.

It is further alleged that, when the plaintiff was about to commence logging the timber, in April, 1949, it was notified by the division of forestry that the forest practices act (Laws of 1945, chapter 193, p. 556, as amended by Laws of 1947, chapter 218, p. 928) applied to the timber in question; that it would be necessary that a permit be secured by the state of Washington and the logger, pursuant to the provisions of the statute referred to; that, without the issuance of such a permit, the division of forestry would not allow the logging operation, and that, upon application of the state of Washington, as owner of the section, and the operator, the state supervisor of forestry issued to the state of Washington a timber-cutting permit for the year 1949, dated April 5, 1949, and expiring December 31, 1949.

Plaintiff alleged that, upon receipt of the permit, it proceeded, through its contractor, to log the timber; that the supervisor of forestry has insisted that the plaintiff and the state comply with the forest practices act and, in addition to not logging the five acres of the section above referred to, "do not log but leave as seed areas" an additional twenty-seven acres, and that the division of forestry has notified plaintiff that, if the additional twenty-seven acres of seed areas are not set aside, it will not permit further logging of the timber.

Plaintiff further alleged that logging operations were suspended during the early portion of the year 1950, due to inclement weather; that a renewal cutting permit for the year 1950, similar to the permit granted for the year 1949, has been granted to the state; that the director of the department and, more particularly, the supervisor of forestry are charged with the duty of enforcing the forest practices act as against the state and the plaintiff, in connection with the logging operation; that plaintiff will be damaged in its property rights by enforcement of the forest practices act; that such enforcement will result in the infringement of

its constitutional rights, in that it will unlawfully deprive plaintiff of its property, contrary to the due process and equal protection clauses of the fourteenth amendment to the constitution of the United States; that, upon the expiration of five years from the date of the bill of sale, namely, June 18, 1951, all timber on the section referred to will revert to the state of Washington; that, if the plaintiff is required to set aside for seed areas twenty-seven acres of the timber, the title to the timber on that acreage will revert to and become the property of the state upon the expiration of the five-year period; and that, thereby, plaintiff would lose the value of the timber on that acreage, which value exceeds fifteen thousand dollars.

Plaintiff also alleged that it instituted this action pursuant to the provisions of Rem. Rev. Stat. (Sup.), § 784-1 [P.P.C. § 65-1] *et seq.*, seeking a determination concerning the application of the forest practices act to state school timber sold by the state of Washington under the public land laws of the state, and to determine the status of the plaintiff, as owner of the timber under the bill of sale from the state, and for the purpose of seeking a determination as to whether the forest practices act applies to the state and to the plaintiff, as its grantee, in connection with the logging of the timber from the school section referred to above.

Plaintiff prayed for a declaratory judgment adjudging the questions above stated.

The defendants demurred to the complaint upon two grounds: (1) that the court has no jurisdiction over the defendants or the subject matter of the action, and (2) that the complaint does not state facts sufficient to constitute a cause of action.

After argument, the trial court filed its memorandum opinion, stating that the demurrer would be sustained upon the second ground stated therein, and, the plaintiff having declined to plead further, the court entered a formal order, June 26, 1950, sustaining the demurrer and dismissing the action, awarding costs against the plaintiff.

From this order, the plaintiff has appealed, presenting the following assignment of errors:

"(1) The Court erred in sustaining a demurrer to the complaint.

"(2) The Court erred in dismissing the action."

This case was argued to the court September 14, 1950. October 3rd following, appellant filed its reply brief, contending that the doctrine of equitable estoppel applies in its favor, and citing authorities in support of its argument upon that point. This question was not suggested nor were any authorities on the point cited in appellant's opening brief.

In *Markall v. Smithway Machinery Co.*, 34 Wn. (2d) 749, 209 P. (2d) 449, we referred to and quoted from Rule of Supreme Court 11, 18 Wn. (2d) 12-a, as follows:

" 'Not less than ten days prior to the hearing, the appellant may also serve and file with the clerk of the supreme court a like number of copies of a printed brief, strictly in reply to respondent's brief. . . . But the appellant shall not be permitted to urge in any such reply brief or statement of additional authorities, or on the hearing, any grounds for reversal not clearly pointed out in his original brief.' "

The *Markall* case was cited and followed in *Schrock v. Gillingham,* 36 Wn. (2d) 419, 219 P. (2d) 92.

Appellant's reply brief was filed more than two weeks after the case had been argued and submitted, and, following the cases cited, we do not consider arguments or authorities presented by appellant for the first time in its reply brief.

In connection with the questions here presented, three statutes should be considered. The first is Laws of 1927, chapter 255, p. 468, Rem. Rev. Stat., § 7797-1 [P.P.C. § 940-109] *et seq.,* as amended, relating to public lands. Section 39 of this act (Rem. Rev. Stat., § 7797-39) refers to the sale of lands granted to the state for educational purposes, after timber or other valuable materials have been removed therefrom. Section 40 (Rem. Rev. Stat., § 7797-40) provides for the sale of timber upon state lands, "except capitol build-

ing lands," and vests the commissioner with authority to prescribe rules and regulations governing the manner of removing the timber. Section 41 (Rem. Rev. Stat., § 7797-41) provides that, when the merchantable timber has been sold and removed, the commissioner "may classify the land, and may reserve from any future sale such portions thereof as may be found suitable for reforestation."

The second statute to be considered is Laws of 1945, chapter 193, p. 556, Rem. Supp. 1945, § 5823-10 *et seq.,* the title of the act and § 1 thereof reading as follows:

"AN ACT relating to forestry; prescribing practices to be observed in the harvesting of forest products which will tend to insure future growth; providing for the enforcement thereof; and imposing penalties.

"Section 1. Keeping the forest land of this state continuously and fully productive is one of the most important steps toward perpetuation and conservation of its forest resources. One of the most important means of effectuating such public policy is to keep timber lands productive by seeking to maintain continuous growth of timber on all lands suitable for such purposes, and in order to accomplish this end it is necessary, and in the public interest, to prescribe certain rules of forest practices to be observed in the harvesting of timber."

Section 2 of the act (Rem. Supp. 1945, § 5823-11) defines the terms used therein, the pertinent subdivisions thereof reading as follows:

"When used in this act:

"1. The term 'Forester' shall mean the State Supervisor of Forestry.

"2. The term 'owner' shall mean the owner of any forest land. . . .

"5. The term 'operator' shall mean any person, firm or corporation which engages in logging of timber for commercial purposes from any land within the State of Washington."

By § 3 (Rem. Supp. 1945, § 5823-12), it is provided that any owner or operator of land supporting a merchantable stand of timber which is to be logged during the current calendar year, must first obtain a written permit from the state forester.

Section 6 (Rem. Supp. 1945, § 5823-15) reads as follows:

"The provisions of this act shall be deemed to have been complied with in the area west of the summit of the Cascade Mountains if at time of issuance of a certificate of clearance by the Forester in accordance with chapter 140, Laws of 1941, there shall have been reserved and left uncut not less than five per cent (5%) of each quarter section (160 acres) well stocked with commercial coniferous trees not less than sixteen (16) inches in diameter breast high outside the bark until such time as the area is adequately stocked by natural means. The foregoing may be accomplished by leaving marginal long corners of timber between logged areas, or strips of timber across valleys, or along ridges and natural fire breaks, or leaving staggered settings and uncut settings."

By § 8 (Rem. Supp. 1945, § 5823-17), the state forester is vested with authority to compel the "owner or operator" to comply with the provisions of the act, and to order the "operation" discontinued until satisfactory assurance be given that the operation will be continued in compliance with the provisions of the act.

The third statute is Laws of 1947, chapter 218, p. 928, Rem. Supp. 1947, § 5823-11 *et seq.,* which is entitled as follows:

"An Act relating to forestry; prescribing practices to be observed in the harvesting of forest products; amending chapter 193 of the Laws of 1945 (Remington's 1945 Supplement 5823-10 to 5823-18; PPC 1945, 574h-1 to 574h-19); and prescribing a penalty."

By § 1 of this act (Rem. Supp. 1947, § 5823-11), § 2 of the 1945 act (Rem. Supp. 1945, § 5823-11) was amended in certain particulars, subdivisions 1, 2 and 5 of § 2 of the prior act being re-enacted.

Section 3 of the 1947 act (Rem. Supp. 1947, § 5823-13) provides that "reserve trees of commercial species deemed adequate under normal conditions to maintain continuous forest growth," and so forth, shall be left standing by "every permittee," this section being a re-enactment of a similar section in the 1945 act (Rem. Supp. 1945, § 5823-13), save that the later act specifies "every permittee," instead of "every owner or operator," as in the prior act.

By § 5 of the 1947 act (Rem. Supp. 1947, § 5823-15), § 6 of the 1945 act (Rem. Supp. 1945, § 5823-15) was amended by requiring that not less than five percent of each quarter section "or lesser subdivision" be left uncut. The 1945 act was amended in other particulars which need not be here discussed.

The question to be here determined is whether the forest practices act, Rem. Supp. 1945, § 5823-10 *et seq.,* as amended, applies to the state or whether the state is not within the provisions of the act because not specifically mentioned in the statute nor brought within its scope by necessary implication.

█ Appellant cites authorities in support of its contention that the sovereign is not included within a restrictive statute, unless the sovereign is specifically named therein or covered by necessary implication. This legal proposition is a correct statement of the law.

As the state is not named in the statute, the question to be determined is whether the state is included within the scope of the statute by necessary implication.

As above stated, § 1, the preamble to the 1945 act (Rem. Supp. 1945, § 5823-10), includes the following:

"Keeping the forest land of this state continuously and fully productive is one of the most important steps toward perpetuation and conservation of its forest resources. . . ."

In *Fenner v. Luzerne County,* 167 Pa. 632, 31 Atl. 862, the court quoted with approval the decision of the trial court, which contained the following:

" ' "A preamble is said to be the key of the statute, to open the minds of the makers as to the mischiefs which are to be remedied, and the objects which are to be accomplished by the provisions of the statute:" 2 Bouv. Dic. 364, 11th ed.' "

The court then, in a short *per curiam* opinion, affirmed the judgment from which the appeal was prosecuted.

█ In *Western Lbr. & Pole Co. v. City of Golden,* 23 Colo. App. 461, 130 Pac. 1027, the court, in holding that a mechanic's lien was enforcible against a city, approved the

principle that the preamble of an act is a strong indication of the legislative intent in passing the law.

By Rem. Supp. 1947, § 5823-11, it is provided that the term "owner" shall mean the owner of any forest land.

Appellant contends that Rem. Supp. 1947, § 5823-15, *supra,* does not apply to the situation here presented. By that statute, the method of reforestation was changed from the cutting of all of the timber and reseeding the entire area to the method of leaving certain portions of the land uncut so that the land would be reseeded from standing trees.

Respondents cite the case of *State v. Dexter,* 32 Wn. (2d) 551, 202 P. (2d) 906, upon which the trial court relied in sustaining respondents' demurrer to the complaint. In the case cited, it appeared that the state forester, having discovered that the defendant, the owner of a tract of timber land, was cutting timber therefrom without a permit from that officer, instituted the action for the purpose of enjoining further cutting of timber until the owner should obtain a permit from the state forester, which the owner could not procure without giving satisfactory assurance that he would comply with chapter 193, Laws of 1945, as amended by chapter 218, Laws of 1947, *supra.* The facts were stipulated, and the trial court sustained a demurrer to the complaint and, considering the stipulated facts, dismissed the action.

On appeal by the state, we held that the trial court had erred in sustaining the defendant's demurrer to the complaint and in dismissing the action, and reversed the order appealed from, with instructions to enter an order enjoining the owner from further timber-cutting operations until he should obtain a permit from the state forester and agree to comply with the 1945 act, as amended. The question of whether or not the act would apply to the state, in connection with the sale by the state of timber standing on state school lands, was, of course, not presented, but, in the course of the opinion, we said:

"There is ample and sound authority to sustain our conclusion that the challenged legislation is for the general or public welfare and is a proper exercise of the police power."

Appellant argues that the statutes above referred to do not apply to the state, citing authorities.

In 25 R. C. L. 784, § 32, appears the following text:

"The rule may therefore be stated to be that where the effect of a statute in general terms would be to restrict the rights of the state, to affect its interests or to impose liabilities upon it, the statute will be held to be inapplicable to the state unless it is named expressly or by necessary implication."

Appellant also cites *State v. Gorham*, 110 Wash. 330, 188 Pac. 457, 9 A. L. R. 365, in which this court held that the sheriff of a county was not subject to a city ordinance fixing maximum speeds of motor vehicles, while he was pursuing a person accused of a felony, for whose arrest he had a warrant. The principle above referred to is not discussed in the opinion.

In the case of *O'Berry v. Mecklenburg County*, 198 N. C. 357, 151 S. E. 880, 67 A. L. R. 1304, the state sought to enforce against a county a statute providing for the collection of a tax upon gasoline distributors. It was held that the county was a part of the state government and not a distributor within the purview of the statute, and that the state could not collect the tax as it was not within the purview of a general statute unless referred to therein.

In *Nelson v. McKenzie-Hague Co.*, 192 Minn. 180, 256 N. W. 96, 97 A. L. R. 196, it was held that the plaintiff could not enjoin an alleged nuisance resulting from blasting operations conducted by the defendant, while building a bridge pursuant to a contract with the state. The court held that the state was not within the scope of the statute granting relief as against public nuisances. In the course of the opinion, the court quoted from *United States v. Herron*, 87 U. S. 251, 22 L. Ed. 275, as follows:

" '. . . the settled rule of construction [is] that the sovereign authority of the country is not bound by the words of a statute unless named therein, if the statute tends to restrain or diminish the powers, rights, or interests of the sovereign.' "

In so far as the authority of the state over its timber lands is concerned, any diminution of that authority by the statutes above referred to is clearly for the public benefit and for the protection of the very valuable timber properties now owned or in the future to be owned by the state.

In the case at bar, it is not sought to hold the state responsible for an injury or a wrongful act. The question here presented concerns a claim by the state, through its appropriate officer, in an attempt to enforce a state statute enacted for the public benefit.

■ In the case of *Exchange Nat. Bank of Spokane v. United States,* 147 Wash. 176, 265 Pac. 722, 62 A. L. R. 139, in which action the question of preference between a claim on the part of the United States, on the one hand, and the state of Washington, on the other, to collect Federal and state taxes, respectively, from an insolvent corporation was presented, this court held that the claim of the United States was entitled to preference. In the course of the opinion the court referred to the rule that,

" . . . whenever a sovereign is not named in a statute, it is not bound by the act if it tends to restrain or diminish its rights or powers, unless it be one passed for the public good, such as the advancement of religion and justice, or to prevent injury or wrong. *Dollar Savings Bank v. United States,* 86 U. S. 227, 22 Law Ed. 80; *United States v. Herron,* 87 U. S. 251, 22 Law Ed. 273 [275]."

The court noted that, in the case before it, there were "two sovereigns with one holding the right to prevail in case of conflict."

In *Umthun v. Day & Zimmermann,* 235 Iowa 293, 16 N. W. (2d) 258, the court considered whether or not the "Fair Labor Standards Act" applied to interstate transportation by the Federal government. It was held that the act did so apply, because the statute had been enacted for the public good and to prevent injury and wrong.

In this connection, the case of *Moehl v. E. I. DuPont de Nemours & Co.,* 84 F. Supp. 427, is of interest, as is the text found in 59 C. J. 1103, § 653.

The supreme court of Missouri, in *Department of Penal Institutions v. Wymore*, 350 Mo. 127, 165 S. W. (2d) 618, held that the "Drivers' License Act" (which did not mention the state) applied to the commissioners of the department, who, while in the performance of their statutory duties, had assigned unlicensed persons confined in the state penitentiary to drive prison motor vehicles on the highway. The court noted that the general rule concerning the applicability of statutes to the state had been relaxed.

In *People v. Centr-O-Mart*, 34 Cal. (2d) 702, 214 P. (2d) 378, it was held that the state could maintain an action under an "Unfair Practices Act" which provided that " 'Any person or trade association may bring an action . . .' " In the course of the opinion, the court said:

"Where a statute is not expressly made applicable to government, it is for the courts to determine whether the Legislature intended it to apply to government. In making that determination, it is proper to consider all matters which, under the rule of statutory interpretation, shed light on the legislative intention. (*Nutter v. Santa Monica*, 74 Cal. App. 2d 292 [168 P. 2d 741].) Words of a statute must be given such interpretation as will promote rather than defeat the general purpose and policy of the law. (*Dept. of Motor Vehicles v. Industrial Acc. Com.*, 14 Cal. 2d 189 [93 P. 2d 131].)"

In 3 Sutherland Statutory Construction (3d ed.) 191, § 6302, appears the following text:

" . . . And so a general statute which is beneficial to the sovereign will be liberally interpreted to secure for it the same rights, privileges and protection granted to individuals. . . .

"The stringency of the rule should be liberally relaxed where the demands of a contrary policy include the government within the purpose and intendment of the statute. Such a policy may be reflected from one or both of two sources: *First*, where the objective of the statute could not be accomplished without including the government. On this ground the interstate commerce regulations have been applied to state-owned railroad cars, and for the same reason an oil conservation statute has been interpreted to include state-owned lands. *Second*, a contrary policy is

indicated where the inclusion of a particular activity within the meaning of the statute would not vitally interfere with the processes of government."

The case of *Shell Petroleum Corp. v. State*, 86 S. W. (2d) (Tex. Civ. App.) 245, is referred to in the above-quoted text, the court there having stated that "The state is as much bound· as private individuals by its Conservation Laws."

The supreme court of the United States, in *Nardone v. United States*, 302 U. S. 379, 82 L. Ed. 314, 58 S. Ct. 275, held that a Federal statute providing that " 'no person not being authorized by the sender shall intercept any communication and divulge or publish the existence, contents, substance, purport, effect or meaning of such intercepted communication to any person; . . . ' " applied to the United States, and that the government's agents were prohibited from testifying as to what was heard over a tapped wire. In the course of the opinion, the court said: "That principle is that the sovereign is embraced by general words of a statute intended to prevent injury and wrong." The converse of this proposition should also be true, namely, that the sovereign is included by general words of a statute intended to benefit the sovereign and, through it, the public at large.

There can be no question but that the preservation and perpetuation of the vast timber resources of this state are most important to the state and to the public at large. Standing timber must be seasonably cut or it will deteriorate in value. Much of the timber land in this state is of little value, save for timber growing or to be grown thereon. It is not only the right but the duty of the legislature to provide for the continued maintenance of this valuable and useful product. It seems clear that the legislature was of the opinion that the act of 1927, *supra*, made inadequate provision for reforestation.

Consideration of the preamble to chapter 193, Laws of 1945, together with the definition of the word "owner," as contained in the statute, convinces us that the law was en-

acted to protect all forest land within this state, and not merely that owned by private persons. It would be unreasonable to hold that the legislature intended to provide for adequate reforestation of some of the timber lands in the state, leaving without the purview of the act a large portion of valuable timber land.

Appellant argues that it is contrary to the principles of common honesty to refuse to allow the cutting of the twenty-seven acres of timber for which it has paid a considerable sum. In this connection, it should be noted that, under the allegations of appellant's complaint and its prayer for "a declaratory judgment of this Court, adjudging whether or not the Forest Practices Act applies to the State of Washington and to the plaintiff [appellant] in connection with the logging of the timber on the school section involved in this action," the only question presented for our decision is whether the provisions of the forest practices act apply to state-owned timber. In holding that the act does apply to the timber involved in this case, we express no opinion concerning the manner in which this sale was made to appellant. However, it may be observed that appellant purchased the timber after the enactment of chapter 193, Laws of 1945.

Following, and somewhat extending, the doctrine approved in *State v. Dexter*, *supra*, the judgment appealed from is affirmed.

HILL, GRADY, and DONWORTH, JJ., concur.

SIMPSON, C. J., dissents.